(No. 29256.—

FOREST PRESERVE DISTRICT OF COOK COUNTY, Appellant,
*vs.* ANTON KERCHER *et al.,* Appellees.

*Opinion filed May 21, 1946.*

12

GEORGE A. BASTA, HERBERT C. PASCHEN, and L. A. WESCOTT, all of Chicago, for appellant.

ARTHUR R. SEELIG, of Chicago, for appellees.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

The Forest Preserve District of Cook county filed a petition in the circuit court of that county to condemn four contiguous parcels of property, alleging as owners and parties in interest, Anton Kercher and Marie Kercher, his wife, Anny Baelz and Max Baelz, her husband, Chicago Title & Trust Company, as trustee, Anny Baelz, as trustee, and unknown owners.

The property involved is located on the east side of Skokie highway, in Northfield township, Cook county, Illi-

nois, west of the village of Glencoe, approximately twenty-three miles north of the Chicago loop. The property consists of four separate parcels of land which are contiguous. One of the parcels is vacant and the other three are improved. The jury returned a verdict upon which judgment was entered finding the just compensation for parcel No. 1 to be $23,600; for parcel No. 2, $3,600; for parcel No. 3, $13,000; and, for parcel No. 4, $42,500. The cause was submitted to the jury on its view of the premises, the testimony of three expert witnesses for appellant, the testimony of Anton Kercher and four expert witnesses for the appellees. The witnesses on behalf of appellant testified as to the existence of a nonconforming use as to parcel No. 4, which was improved with a restaurant building, and gave as their opinion the highest and best use for parcels 1, 2 and 3 was the permissible farming use as limited under, and strictly defined by, the Cook county zoning ordinance.

Witnesses for the appellees testified that the highest and best use of parcels 1, 2 and 3 was for permissible use and development as residential and farming zone property plus parking to the extent that the parcels were being used. The appellant's witnesses disregarded the best use of parcels for parking and present use incidental to the restaurant located on parcel No. 4, while appellees' witnesses testified that the highest and best use of parcels 1, 2 and 3 was for permissible use and development as residential and farm zone property and was augmented by the parcels now being used for parking purposes in connection with the restaurant located on parcel No. 4. As to parcel No. 4, both sides are agreed that the present use for restaurant purposes constitutes the highest and best use. The range of evidence on the valuations on parcel No. 1 vary from $12,750 of a witness for the appellant to $24,900, testified to by a witness for the appellees; for parcel No. 2, from $1650 to

$4250; for parcel No. 3, from $7700 to $16,700; and, for parcel No. 4, from $27,000 to $43,000.

Five errors are assigned as grounds for reversal, namely: Error in the admission of evidence of sales of property made prior to the adoption of the Cook county zoning ordinance; improper admission of testimony of a witness not qualified to testify as to use and value of the lands; improper testimony of witnesses in behalf of appellees as to the highest and best use of parcels 1, 2 and 3 which was prohibited by the Cook county zoning ordinance, and that the valuations for such use were false values which misled the jury; that the jury failed to give proper consideration to the testimony of appellant's witnesses, and returned a verdict that is grossly excessive and against the manifest weight of the evidence; and that counsel for appellees was guilty of misconduct in making prejudicial, improper and inflammatory argument to the jury.

A brief description of the parcels of land is necessary, as certain controverted questions arise by reason of the evidence being proper as to certain tracts and, it is contended, improper as to others.

Parcel No. 1 contains 4.7 acres, with a frontage on Skokie highway of 260½ feet and a depth on the north line of 802 feet, with an irregular south line, and an east north-and-south line of 300 feet. It is improved with a four-room frame residence. Parcel No. 2 is one acre in size, unimproved, with a frontage of 86 feet on Skokie highway and a depth on the north line of 584 feet and on the south line of 546 feet. This parcel of land has been filled up to grade to a depth of approximately 150 feet and is located to the south of parcel No. 3. Parcel No. 3 is immediately south of parcel No. 1 and contains 1.68 acres and lies between parcels 1 and 2. It has a frontage of 81 feet on Skokie highway and a depth on the south line of 584 feet and is improved with a three-and-one-half room frame residence and two-car garage. Parcel No. 4 con-

tains 0.61 acre and has a frontage of 148.4 feet on Skokie highway. The land has been filled to provide a parking area and is improved with a story-and-a-half frame and brick building especially built for the purpose of a restaurant and tavern in which the Chalet restaurant is being operated. Parcel No. 4 was purchased in 1937 and the Chalet building was constructed in the spring of that year. The kitchen was enlarged in 1938, and again in 1939, and the north or second dining room was added in the spring of 1938. Surrounding the Chalet restaurant building is a white crushed-stone-surfaced parking area which covers all of parcel 4 and proceeds southward entirely through parcel 3 and about to the south limit of parcel 2, which is the south limit of the group of the four parcels. The type of architecture of the three buildings located on the parcels is of Swiss Chalet design, and the central portion of the parcels, surrounding the residences and lake particularly, is most heavily landscaped, forming a park or grove. All of the buildings were erected and the restaurant and beverage business was conducted prior to the effective date of the Cook county zoning ordinance, which went into effect on August 20, 1940. Section 8 of said ordinance, which is material here, is as follows:

"Section 8. F Districts (Farming)

In the F Districts the only uses which may hereafter be established are those permitted in the R-3 Districts and in addition the following: (1) specialized poultry, pigeon, rabbit and other animal farms, but not including the feeding or disposal of community or collected garbage, (2) apiaries, (3) mushroom barns, (4) greenhouses, (5) nurseries, (6) dog kennels, (7) removal of black dirt or top soil, stone, gravel and clay (sites of fixed plants for processing such materials shall be classified in the 1-2 District,) (8) sale of products from any of the above uses, (9) storage of farm products, (10) recreational camps, (11) riding stables, (12) veterinary establishments, (13) racing establishments, (14) filling of holes, pits, quarries or lowland with non-odorous and non-combustible material free from garbage and food wastes, (15) picnic grounds or groves but not including taverns and commercial eating places, (16) athletic fields, (17) skeet or trap shooting if

not nearer than 800 feet to any residence other than the lessor or owner of the site, (18) radio stations, (19) institutions, (20)· cemeteries, (21) temporary carnivals and circuses, operating not longer than 10 days."

The properties of the appellees were all purchased prior to the adoption of the Cook county zoning ordinance and, at the time of the adoption of said ordinance, it also contained, (which is pertinent here,) a section as to nonconforming uses, as follows:

"Section 16. Nonconforming Uses and Buildings

Any use, building or structure lawfully existing or under construction on the adoption date of this ordinance or of a later amendment thereo, which does not conform to the provisions of said ordinance or amendment, shall be known as nonconforming. Such nonconforming use, building or structure may be continued, maintained, or changed to a conforming use; but a nonconforming use shall not be (a) changed to a use of a lower class, nor (b) expanded, nor (c) re-established if discontinued or changed to a conforming use for one year or more, nor (d) continued if the building or structure be destroyed or damaged to the extent of 50 per cent or more of its value. Exceptions: A nonconforming B-1 or B-2 use surrounded on two or more sides by land classified in the F or lower districts may be permitted to expand once not over 50 per cent in area and may be re-established if destroyed or damaged to any extent.

"A building or structure for a nonconforming use under construction on the adoption date of this ordinance or of a later amendment thereto creating the nonconformity shall be completed within one year. A complete record of the location, value, nature and extent of all nonconforming uses shall be made and kept by the enforcing officer."

It is first urged by appellant that the trial court committed error in admitting in evidence sales of property made prior to the adoption of said ordinance with its accompanying provision for nonconforming use. It is the contention of appellant that the passage of this ordinance so changed the character and use of the properties involved that the value of the property was affected thereby, and as the sales testified to were made prior to the passage

of the zoning ordinance they were not a fair criterion of value.

The controversy arose in the testimony of appellees' witness Dodds, who testified relative to sales made to parties by the name of Weidner and Booth. The sales were made in April, 1940, and were two acre tracts, one back of the other, lying about 300 feet north of the Chalet property, designated as parcel No. 4, and were contiguous to the northern boundary of parcel No. 1. The property was vacant, and the Weidner tract had a front on Skokie highway of about 108 feet, the Booth tract being an inside acre immediately to the east with no highway frontage but with a twenty-foot easement over the front acre for access. The Weidner tract was similar in locality and in the lay of the land but differed in character and the use to which it could be put because of the passage of the zoning ordinance.

The Weidner and Booth properties, whose sales were objected to by appellant, were similar in character. They were immediately adjoining the tracts condemned and the sales met the test as to similarity except being made before the effective date of the zoning ordinance, which, it is claimed, changed the character and permissible use of the property and was no longer a proper basis of value.

Appellant's theory is that the sales of the Weidner and Booth properties were for the purposes of operating a tavern, not permitted after the effective date of the zoning ordinance and, therefore, did not represent a proper basis for comparison. We hardly see how it could reasonably be said that there was a lack of comparability of the Weidner tract as compared with parcel No. 4, sought to be condemned. The evidence discloses that the Weidner tract was sold for the purpose of operating a tavern and was a sale having as its basis for value the desirability and opportunity for such purpose. Parcel No. 4 had a non-conforming use which permitted the same type of use as

was possible before the zoning and was comparable to the use presumably contemplated by the sale. The record discloses that the Weidner-Booth sales, to which witness Dodds testified, were contracted together because the two acres could not be divided and that one piece at the front, facing Skokie highway, was purchased with the idea of establishing a tavern-restaurant, while the rear acre was bought for the purpose of putting in a riding stable, which was a permissible use under the farm zoning ordinance. It would seem that the Weidner tract was comparable without question to parcel 4 and that the Booth property was at least comparable with parcels 1, 2 and 3. This, of course, left some inconsistency in the admissibility of the sales with the condemned parcels, because of the failure to designate their particular application.

This proceeding, bringing in the condemnation of four parcels, made it difficult to determine just what particular tract the witness had reference to in testifying to the sales which were comparable by reason of the land being similarly situated. This was recognized by the trial court and there was considerable discussion outside the presence of the jury as to the testimony. It was presented to the court that the Weidner tract, by virtue of its proximity, physical situation, legal and other aspects was comparable with parcel No. 4; also, that the Booth tract, which had no street frontage and was to be used for a riding stable permissible under the zoning ordinance, was comparable with parcels 1, 2, and 3.

At this point in the proceedings, counsel for appellant advised the court that he thought the sale should be limited in its admissibility only in regard to parcel No. 4, without designating which sale. He was advised by the court that he could not limit it but that counsel would be permitted to argue to the jury that it was prior to the ordinance, or that the sale was properly comparable to only parcel No. 4; that the sale was in evidence to show what

property that can be used for a tavern is worth; that the other sale will show what the balance of the property, the bare land, is worth, and give some basis of figuring on the four acres but not on the balance. A similar statement was made by counsel for appellant in his closing argument to the jury. The jury could hardly have been misled as to the standard of comparable value of such sales, and, in addition, the witness testified before the jury that the ordinance had changed the value.

After the jury was recalled the witness Dodds testified that Weidner paid $3000 for the north front acre. Again, an objection was interposed without limiting it to the applicability of the sale to the part of the condemned property with which it was comparable and the same general objection was made when the witness testified that the sale price of the Booth tract was $3000. The witness also testified that one acre was sold for use for the sale of liquor and the other acre was sold for use as a riding stable. From this it can readily be seen that even though the jury failed to take into consideration the proper application of the sales to the condemned property, the dissimilarities were fully disclosed.

This court, in the case of *Forest Preserve District* v. *Caraher*, 299 Ill. 11, said: "Every piece of property has its advantages and disadvantages and differs in the character of its improvements and otherwise, and if there are minor differences the owner is entitled to show such facts as will enable the jury to understand the differences between the property to be taken and that which has been sold."

In the case of *Forest Preserve District* v. *Folta*, 377 Ill. 158, where the appellants contended that certain testimony was not admissible because subsequent reconditioning and improvements changed the value and rendered the property dissimilar, we said: "The degree of similarity required between property to be taken and other tracts of

land shown in evidence cannot be governed by any fixed rule, but the admissibility of such testimony must, in each instance, be determined by the trial judge, within the proper limits of his discretion. (*Forest Preserve District* v. *Wallace,* 299 Ill. 476; *Forest Preserve District* v. *Barchard,* 293 Ill. 556.) Where, as in each of the foregoing instances, a reasonable basis for comparison exists, the dissimilarities, which are disclosed to the jury, affect the weight and value of the testimony rather than its competency. (*Forest Preserve District* v. *Eckhoff,* [372 Ill. 391]; *Forest Preserve District* v. *Kean,* 298 Ill. 37.) The jury had inspected the premises and could not have been misled by the challenged testimony. The trial court acted within its sound discretion in admitting proof of these sales in evidence." The jury in the instant case had inspected the premises, and the testimony as to the effect of the zoning ordinance was clearly presented by the evidence. Under the conditions above set forth we are of the opinion the trial court acted within its sound discretion in admitting proof of these sales in evidence.

Appellant cites the case of *Forest Preserve District* v. *Chilvers,* 344 Ill. 573, and other cases pertaining to the rule as to the evidence of sales of dissimilar property. These cases, of course, present the rule as to the evidence of sales of dissimilar property and were in harmony with the facts therein stated; however, the degree of similarity required between property to be taken and other tracts of land shown in evidence cannot be governed by any fixed rule, but the admissibility of such testimony must, in each instance, be determined by the trial judge within the proper limits of his discretion.

Appellant contends the trial court erred in permitting appellees' witness, Thomas J. Heavey, to testify as to use and value of lands for the reason that said witness was not qualified to so testify. The rule adopted in this State is that anyone who is acquainted with the property and

has knowledge of values, either in the sale or ownership of property nearby, is competent to testify. The question of the degree of his experience is one of weight and not of competency of his testimony. (*Dept. of Public Works and Buildings* v. *Diggins,* 374 Ill. 11; *Kankakee Park District* v. *Heidenreich,* 328 Ill. 198; *Crystal Lake Park District* v. *Consumers Co.* 313 Ill. 395; *Chicago and Evanston Railroad Co.* v. *Blake,* 116 Ill. 163.) The witness testified he was a builder and contractor, had constructed about 200 buildings, residences, flats and warehouses for the Sanitary District of Chicago and the city of Chicago and had bought probably fifty parcels of real estate since 1922; that he was acquainted with Skokie district along the east side of Skokie avenue from Lincoln avenue north; that there were several taverns located there, including the Chalet; that he had been told of the zoning ordinance covering the property and knew that the same had a nonconforming use. We have examined the record as to the qualifications of this witness and are of the opinion his testimony comes within the rule.

It is next urged by appellants that the testimony of appellees' witnesses was as to the highest and best use of parcels 1, 2 and 3 which use was contrary to and prohibited by the provisions of the zoning ordinance, and that the testimony as to values for such use misled the jury. In this regard we are immediately confronted with the fact that the testimony of appellees' witnesses was not objected to upon these grounds, nor was a motion made to strike the testimony for such reason. Appellant does call our attention to an objection made to the testimony of the witness Dodds and cites in its reply brief the page of the abstract and record in support of its position. It is not contended objection was made to the testimony of other witnesses in this respect. It is apparent the objection that was made pertains to the opinion testimony of the witness Dodds as to the best and most profitable use of parcel 3,

not as a part of the whole, because the court sustained an objection as to this form of the answer and the witness was permitted to testify that the highest, best and most profitable use at the time was its present use. Appellant's position as to this is not sustained by the record, and where objections are not made they will not be considered.

Analyzing the testimony of witnesses who testified as to the use of parcels 1, 2 and 3, which, it is contended by the appellant, was false and misled the jury, the record here presents a case where a petition is filed, and properly so, including several parcels of property in one petition, compensation for each of which is to be assessed separately. The record discloses that this property has more or less been used together as a unit although the petition does not disclose the exact ownership of the various parcels, but it is apparent from the purchases, construction and operation that they are closely knit as one property. The restaurant building, referred to as "The Chalet," extends on all sides to within a short distance from the boundaries of such parcels. The parking space used incidental to such business, as testified to by the witnesses, extends entirely through parcels 3 and 2, to about the south boundary of parcel 2, and extends northward from parcel 4 into parcel 1 and also, in the rear, to parcel 3. It is significant witnesses for the appellant testified that the parking space to the north of "The Chalet" goes to the north limit of parcel 4 and perhaps on to parcel 1, and, in the opinion of the witness, parking space does not go far on to parcel 1. There seems to be some conflict between appellant's and appellees' witnesses as to parking facilities which apparently, were in existence before the zoning ordinance and under any and all conditions could still be used for that purpose. The parking facilities, it seems, would be permissible under the nonconforming use even though it could be said such use did not come under the nonconforming use of the Chalet property proper. If the adjacent parcels to the

Chalet property were being used for parking facilities, we see no reason why they would not be of some value under a nonconforming use as well as enhancing the value of the parcel on which the restaurant was located. This parking space which could be used, even under the zoning ordinance or under the nonconforming use, would be of considerable value. The value for parking purposes on parcels 1, 2 and 3, to the extent they were used, or could be used, for such purpose, was proper to be considered in determining the value of parcel No. 4, where the restaurant and tavern were conducted, and parcels 1, 2 and 3, to the extent of any parking space, would be enhanced in value by their proximity to the tavern. In certain businesses it is as essential to have a parking space as it is to have the business. One does not seem to operate well without the other. We have held that if the land has upon it anything which materially adds to its market value the owner has a right to show its character and to what extent it enhances market value. *Forest Preserve District* v. *Caraher,* 299 Ill. 11; *DeBuol* v. *Freeport and Mississippi River Railway Co.* 111 Ill. 499; *Vandalia Levee and Drainage Dist.* v. *Hutchins,* 234 Ill. 31.

It seems to be the contention of appellant that all of appellees' witnesses were basing their values on parcels 1, 2 and 3, as a part of, or connected with, the tavern as one entity and, therefore, applying the nonconforming use to all the property, it enhanced their value. The record does not justify this assumption. Richard Hart testified as to parcel 1: "I think the best use would be a picnic grove or a roadside stand for the sale of dairy produce, and residential use;" as to parcel 2: "the highest and best use is its development as a picnic grove, or a parking area, or residential use, or possibly a roadside stand selling farm vegetables or dairy produce;" and as to parcel 3 he stated the highest and best use is "its present improvements, which include a residence, garage and a parking area—residential

and parking, and possibly a picnic grove." Certainly, under this testimony, it cannot be said the witness took improper elements into consideration. Many other phases of the evidence could be pointed out in this connection but, in any event, it only shows a conflict in the testimony.

It is difficult to try cases of this kind without some improper elements of the fair cash or market value or of the highest and best use getting into the record, but, unless it can be said that such improper elements go to the extent of misleading the jury and result in a verdict manifestly against the weight of the evidence, such improper element does not warrant a reversal.

The appellant further contends that counsel for appellees was guilty of misconduct in persistently repeating objectionable questions and using inflammatory argument to the jury. It is admitted objections were sustained, but it is contended their repetition and further reference to such objectionable matters in the argument, taken in the aggregate, constituted unfair and improper conduct on the part of appellees' counsel; that such conduct was pursued by appellees' counsel for the purpose of prejudicing the jury against the appellant and its witnesses; and that questions pertaining to profits are not admissible in evidence, as this court has held that profits from the business could not be taken into consideration because the business itself was not being taken and could be moved and operated elsewhere. The court, in the case of *City of Chicago* v. *Farwell,* 286 Ill. 415, said: "This value would be included in just compensation if the city were taking the business or depriving appellant of it, but the law is fixed in this State that whenever property has a market value, evidence of profits derived from it is not admissible nor a basis for fixing compensation."

We have examined the record and while it is not entirely free from criticism, we find that where objections were made the court properly sustained the objection. It

would be unusual, in the heat of a trial, if some impropriety did not arise, but this, in the main, is controlled by making the proper objection. Any improper conduct is subject to objection and any improper ruling thereon is subject to review. Many of the statements made in argument, which are claimed by counsel for appellant as being inflammatory and improper, were not objected to. This court has held that where objections do not appear in the abstract such statements are not before this court for review. (*Forest Preserve District* v. *Dearlove,* 337 Ill. 555, and other cases cited.) We have analyzed the record as to the objectionable questions which are properly before us and, while they are not free from error, we do not think they are such as to prejudice the rights of the appellant before the jury.

The final contention of appellant is that the verdict is grossly against the manifest weight of the evidence, and appellant urges the jury was misled by the testimony of appellees' witnesses as to value based upon an impossible highest and best use, and totally disregarded the testimony of the witnesses of appellant although there is nothing in the record to discredit them.

It is true there is considerable conflict as to the use of the particular parcels and a conflict in values. The jury, however, viewed the property and had the full benefit of such view in considering the evidence and arguments. It is the rule in this State that where damages are awarded by a jury in a proceeding in which the evidence is conflicting, and the jury views the premises and fixes the amount of compensation within the range of the evidence, its verdict will not be disturbed unless there has been a clear and palpable mistake or the verdict was the result of passion and prejudice. *Dept. of Public Works and Buildings* v. *Diggins,* 374 Ill. 11; *Forest Preserve District* v. *Collins,* 348 Ill. 477; *Forest Preserve District* v. *Dearlove,* 337 Ill. 555; *Jefferson Park District* v. *Sowinski,* 336 Ill. 390.

On a review of this record, it is our judgment that the verdict of the jury is within the range of the testimony in the record, and that no error was committed requiring the reversal of the judgment. The judgment of the circuit court is, therefore, affirmed.

*Judgment affirmed.*