Forest Preserve District of Cook County, a Municipal Corporation of the State of Illinois, Petitioner-Appellant, v. Clarence F. Yelk, et al., Defendants-Appellees.

Gen. No. 53,236.

First District.

September 22, 1969.

STOUDER, P. J., dissenting.

Alan S. Ganz and Samuel H. Young, of Chicago, for appellant.

Sherman, Schachtman and Stein, of Chicago, for appellees.

ALLOY, J.

This case involves a condemnation proceeding filed by Forest Preserve District of Cook County, Illinois, on June 22, 1966. The tract involved was owned by defendant, Clarence Yelk, and consisted of approximately 19½ acres located in the southwest part of Cook County. This tract was basically a farm tract with a set of buildings consisting of a partial one- and two-story single-family residence, a 250-foot well with pump, a pump house, a garage, a pony barn, an outhouse, and two chicken sheds. The record indicates that the residence was in good condition for its age, but that the other buildings showed visible evidence of their age. The property was zoned R–3, a classification which allowed one-family residences with a minimum lot size of 40,000 square feet and with a minimum width of 100 feet. The jury returned a verdict of just compensation at $62,000. Forest Preserve District appeals from a judgment in such amount.

Two appraisal witnesses testified for the District. One of them, a Mr. Purcell, who was a qualified and licensed appraiser, testified that he made a visual inspection of the house and an analysis of its condition; that he checked the general makeup of the surrounding area as to uses to which it was being put. He also made some investigation as to sales transactions and gave consideration to the proximity of schools, proximity of the highway, and the extent of industrial development in the area. He concluded that the highest and best use of the property on June 22, 1966, was for residential use in conformity with its present zoning. His opinion of the fair cash market value of the property as of such date was $44,125. The testimony of this appraiser was that he was employed by the District to make this appraisal and, also, that he

had made appraisals for individuals as well as public bodies.

Another appraiser, a Mr. Waldman, also a licensed qualified appraiser, testified for the District and, likewise, agreed that the highest and best use of the property was in keeping with the residential zoning. His opinion of the fair cash market value of the property as of June 22, 1966, was $40,500. He also testified that directly across the road from the subject property was a 10-acre tract of unimproved land which had similar topography and contour as the subject property.

During a pretrial conference, the attorney for defendant Yelk, the property owner, indicated that he felt other appraisers who had appraised the tract for the District were not going to testify including a Mr. McNamara. The trial judge advised Yelk's attorney that if he wished to present evidence about a possible "other appraisal" he should bring in Mr. McNamara as his witness. The attorney for Yelk did not do this, but, on cross-examination of the District's appraiser, asked, "Mr. Waldman, how many other appraisers were there in appraising this property aside from yourself?" He also asked if Mr. Waldman was the first to appraise the property. Both questions were objected to by the District and the objections were sustained. The attorney for Yelk also asked his client, Yelk, how many appraisers had come to his house. Again, an objection was sustained and the attorney for Yelk was instructed by the trial judge in his chambers to refrain from such questioning.

Only one appraiser testified for the property owner, a Mr. Schlieske, who was also licensed and qualified as an appraiser. He testified as to the possible use of the land and explained that if a central water system were installed, the lot size could be reduced to 20,000 square feet per lot. He agreed that the highest and best use of the property was as single-family residential subdivi-

sion property in accordance with its existing zoning. On cross-examination of Mr. Schlieske, the District's attorney asked when Schlieske first examined the property, to which he replied, "In the summertime or sometime in July or August of 1967." When the property owner, Mr. Yelk, testified, he was asked if his attorney had employed the appraiser and he stated that he did. Yelk also testified thereafter that he had employed the attorney about the first part of November 1967. He also stated that it was after the attorney was hired that he first had any contact with Mr. Schlieske, the appraiser. The attorney for the Forest Preserve District then used this line of questioning for the purpose of impeaching the testimony of the property owner's appraiser, Mr. Schlieske, since Schlieske had testified that he saw the property in July or August and, if he was not hired until November, he could not have seen the property at such time. During closing argument, the attorney for the District was pointing out this inconsistency in the testimony of Schlieske when the following was shown of record:

> ". . . And Mr. Schlieske could not have made any appraisal in August of 1966 which he testified to because he wasn't contacted until after Mr. Friedman was employed."

> Mr. Friedman: "Objection, your Honor."

> The Court: "What is the objection?"

> Mr. Friedman: "My objection is he is misstating the evidence of my appearance filed in the case. I was on the case long before that."

> The Court: "This is argumentative. Overruled."

In the course of the trial, the attorney for the property owner also attempted to introduce evidence to show that the property owner could only afford to hire one appraiser and, in his closing argument, he likewise attempted

to insert a reference to the fact that this property constituted the life savings of the property owner and that civilization was moving him out.

The District attempted to introduce evidence of the sale of a 10-acre tract across the road which was sold in May of 1966, just a month prior to the petition for condemnation. That 10-acre tract was not an improved tract, and the trial judge sustained an objection to any further evidence in regard to such 10-acre tract. It is contended by the District that evidence of such sale of the 10-acre tract should have been admitted.

The District also asserts that the trial court committed reversible error in refusing a new trial because of the remark made by the attorney for the property owner during the closing argument that he had been in the case a long time before November 1967, and, thus, reduced the effect of the District's argument relating to impeachment of the testimony of the property owner's appraiser. The District also contends that reversible error was committed by reason of the property owner's attorney attempting to create an inference that other appraisers had appraised the property who were not brought in as witnesses and, likewise, that it was prejudicial misconduct for defendant's counsel to deliberately interject in his questioning and argument, appeals for sympathy from the jury with respect to his client.

The first issue for consideration is whether there was reversible error in the refusal of the trial court to allow evidence of the sale of the 10-acre unimproved tract across the road from the tract condemned. As heretofore indicated, this tract was sold in 1966 just a month prior to the filing of the petition for condemnation. An attempt was made to introduce such evidence of the purchase of such tract for the sum of $15,000. An objection was made to the offer of such evidence and the objection was thereupon sustained by the trial court. The District then made an offer of the contract showing such sale and the

closing statement of the sale of the 10-acre tract. No further offer of proof was made by the District. On appeal in this Court, the District contends that the refusal to admit evidence of the sale of such tract was improper. The testimony in the record was general in nature as to the character of the 10-acre tract which was unimproved and used for farming purposes. There was no specific showing by the District of any evidence, nor was an offer of proof made to show a similarity or comparability both in character and locality of the 10-acre tract, although some elements of such comparability could have been deduced from other evidence. The offer of proof, which followed the sustaining of objection to the descriptive testimony of the 10-acre tract, simply covered elements relating to the purchase price of such 10-acre tract.

In City of Evanston v. Piotrowicz, 20 Ill2d 512, 170 NE 2d 569, at 522, the Supreme Court indicated that there is no fixed or general rule which has or could be laid down which governs the degree of similarity which must exist between properties sold and that condemned to make evidence of the sale or sales admissible. The court went on to state (at page 522):

"... rather, the admissibility of such evidence must in each instance be determined by the trial judge within the proper limits of his discretion. (City of Chicago v. Vaccarro, 408 Ill 587; Forest Preserve Dist. v. Kercher, 394 Ill 11.) This court, moreover, has recognized that 'similar' does not mean 'identical,' but means having a resemblance, and that property may be similar for purposes of fruitful comparison, though each possesses various points of difference. (City of Chicago v. Vaccarro, 408 Ill 587, and Forest Preserve Dist. v. Lehmann Estate, Inc., 388 Ill 416.) Wherever there is a reasonable basis for comparison between the property sold and that being condemned, evidence of the sale is not incompetent, and the dis-

similarities between the properties, which are declared to the jury, affect the weight and value of the testimony rather than its competency. Forest Preserve Dist. v. Folta, 377 Ill 158; City of Chicago v. Vaccarro, 408 Ill 587."

██ No simple rule, therefore, could be enunciated with respect to evidence of sales of improved and unimproved property for comparison purposes in condemnation proceedings. The District, on appeal in this Court, contends that the rule relating to admission of such evidence should be whether both parcels (improved and unimproved) are adaptable to the same use. While this is substantially what some Illinois courts have been doing, the allowance of such evidence rests, finally, within the sound discretion of the trial judge (City of Chicago v. Vaccarro, 408 Ill 587, 97 NE2d 766, at pages 600–601; Chicago, North Shore & M. R. Co. v. Chicago Title & Trust Co., 328 Ill 610, 620, 160 NE 226).

██ Near proximity alone to the premises sought to be condemned, is not enough. In Forest Preserve Dist. of Cook County v. The Alton R. Co., 391 Ill 230, 62 NE2d 701, the court stated, at pages 233-4:

"Under the circumstances of this case, there was such dissimilarity between the two tracts that the sale price of the Skavich property should not have been admitted. Having been erroneously admitted, appellants could not establish a similarity by deducting from the sale price estimated values of those things which caused the dissimilarity. If the value of the buildings was deductible in this way, then estimates of values of other items could be shown and such procedure would lead the jury to an investigation of numerous collateral issues. Even though the sale price of the Skavich property was admissible and appellants' theory of deduction of value of improvements approved, the evidence offered would not be

85

admissible for the reason there is nothing to show that the buildings on the Skavich property added anything to the value or furnished a consideration for any part of the sale price."

■ It is clear that the allowance of such evidence rests within the discretion of the trial court and that such determination by the trial court, as to the admissibility of such evidence, will not be the basis for reversal unless there is a clear abuse of discretion. As emphasized by both appellant and appellee in this case, the ultimate test of the admissibility of sales of property in the vicinity is whether the final result would be to assist the jury with useful evidence, or confuse the jury with collateral issues. As stated in Kankakee Park Dist. v. Heidenreich, 328 Ill 198, 159 NE 289, at page 204:

"It is incumbent on the party offering proof of sales of other lands to show, as a foundation for its admissibility, that the lands sold were similar in locality, quality, character and usefulness to the lands in question . . . . The question whether the evidence should be admitted is one involving the discretion of the trial court, and the decision of the court on the preliminary question will not be disturbed unless it is manifestly against the weight of the evidence."

In the cause before us, the trial court could have concluded (as did the court in Forest Preserve Dist. of Cook County v. The Alton R. Co., supra) that the introduction of such evidence would possibly confuse the jury by requiring them to add or deduct the value of improvements. It is notable, also, that the District did not introduce evidence showing similarity or comparability of the 10-acre tract to the tract being condemned. While we do not cite this as the sole basis for our conclusion, we believe that, upon consideration of the record, the action of the trial judge in refusing to allow evidence of the

sale of the vacant 10-acre tract, did not constitute an abuse of judicial discretion.

■ With respect to the question as to whether error was committed in the refusal to grant a new trial because of the remark made by the property owner's attorney during closing argument (to which we have referred in this opinion) it does not appear that this should be a basis for reversal. A reading of the record of the testimony as to when defendant Yelk first met his appraiser shows that there was some question as to whether Mr. Schlieske was actually hired in July or later in November. While there was no evidence in the record as to exactly when the attorney entered the case, it does not appear that his statement could have any significant detrimental effect in the case as to the District's contentions. The attempted impeachment was based upon a minor detail, being a question of when the appraiser first went to appraise the property. Since the property was to be appraised as of the date the petition for condemnation was filed, it was not significant as to when the appraiser first viewed the property. We do not believe that the cases of Vujovich v. Chicago Transit Authority, 6 Ill App2d 115, 126 NE2d 731, and Ryan v. Monson, 33 Ill App2d 406, 179 NE2d 449, are applicable as precedents. In such cases the remarks and conduct of counsel were clearly prejudicial.

■ On the issue of whether the property owner's attorney was guilty of prejudicial misconduct in creating an inference before the jury that plaintiff was suppressing adverse evidence, it is noted that the attorney for the property owner was warned not to mention the name of one McNamara. The attorney did not mention that name but he did refer several times in his cross-examination to the possibility of other appraisers. It is difficult to conclude that these references on cross-examination are a justifiable cause for reversal in this case. It was shown that one of the District's appraisers consulted with

other appraisers to help him, and thus, the question of other appraisers may have been an appropriate inquiry on cross-examination. The case of Forest Preserve Dist. of Cook County v. The Alton R. Co., 391 Ill 230, 62 NE2d 701, cited by the District, involved a much more serious attempt to interject a question of suppression of evidence. We do not feel that the conduct of the attorney for defendant in the case before us constituted such a flagrant violation as to be the basis for reversal of the cause in this respect.

■■■ The final question is whether reversible error was committed by the attorney for the property owner in interjecting appeals for sympathy for his client. There was an attempt to ask Mr. Yelk a question as to his opinion of the value of the property without laying any foundation, thus giving the impression that the court would not let the property owner testify about his own property. There was also reference by the property owner to his children and the fact that Mr. Yelk's life savings were tied up in this property. Finally, there was an argument by the property owner's attorney that the property owner could only afford to hire one appraiser. All these matters were objected to by the District, however. On the basis of the action of the jury, we do not believe that these items aroused such sympathy in the minds of the jury as to justify a reversal of the case.

It is contended by the District that each of the instances of misconduct of the property owner's attorney standing alone would probably not be grounds for reversal but that their cumulative effect should require such reversal. We do not believe, however, that, considering all the instances referred to in the case before us, we would be justified in reversing this cause. As stated by the court in Forest Preserve Dist. of Cook County v. Kercher, 394 Ill 11, 66 NE2d 873, at page 25:

"The jury, however, viewed the property and had the full benefit of such view in considering the evidence and arguments. It is the rule in this State that where damages are awarded by a jury in a proceeding in which the evidence is conflicting, and the jury views the premises and fixes the amount of compensation within the range of the evidence, its verdict will not be disturbed unless there has been a clear and palpable mistake or the verdict was the result of passion and prejudice."

In the case before us, the finding for the property owner of $62,000 was well within the range of testimony of the expert witnesses. The property owner's appraiser set the value at $73,500, while the District appraisers set the figures at $40,500 and $44,125, respectively. Nothing in the cause would justify a conclusion that the verdict was the result of passion or prejudice. The judgment of the Circuit Court of Cook County, therefore, will be affirmed.

Judgment affirmed.

RYAN, J., concurs.

## DISSENTING OPINION

STOUDER, P. J.

I do not agree with the majority of the court. My disagreement concerns that aspect of the opinion which approves the exclusion of evidence relating to the similar sale. In my opinion, such exclusion constitutes reversible error.

The majority opinion concludes that the trial court properly excluded evidence of the other sale because it was the exercise of appropriate judicial discretion. The trial court excluded the comparison sale because the com-

parison tract was "vacant," apparently meaning unimproved or without buildings. If this was not a proper reason for excluding evidence of the other sale it does not appear to me that appropriate judicial discretion was exercised.

Appellee's major argument in justification of the trial court's action is stated as follows in his brief. "Thus, the basic rule in Illinois has been that improved and unimproved properties are not similar or comparable. Chicago, North Shore & M. R. Co. v. Chicago Title & Trust Co., 328 Ill 610, 160 NE 226 (1928); Sanitary Dist. of Chicago v. Boening, 267 Ill 118, 107 NE 810 (1915); Chicago & St. L. R. Co. v. Kline, 220 Ill 334, 77 NE 229 (1906)." An examination of the three cases cited does not support the contention that there is any such basic or general rule. Rather these cases are illustrative of the general rule that the nature and extent of improvements is a criteria to be considered in determining the similarity of two tracts of real estate. As applied to real estate, improved and unimproved are not terms of opposition but rather terms of degree. Improvements to real estate generally refer to conditions or structures which have been the result of artificial or man-made alterations of the premises. For example fences, ditches, wells or roadways would be considered improvements and yet the presence or absence of such items in tracts to be compared would not prevent the tracts from being considered similar.

Forest Preserve Dist. of Cook County v. Draper, 387 Ill 149, 56 NE2d 410, Department of Public Works and Buildings v. Diggins, 374 Ill 11, 27 NE2d 826, Forest Preserve Dist. of Cook County v. Kercher, 394 Ill 11, 66 NE2d 873 and Forest Preserve Dist. of Cook County v. The Alton R. Co., 391 Ill 230, 62 NE2d 701, are all cases involving comparisons where one tract had buildings and the other did not. Such cases emphasize that where real estate is adaptable for similar uses, comparison sales

may be appropriate for determining value, but such cases do not go so far as to say that adaptability for use is the only criteria for determining similarity. Thus, if the nature of the improvements is such that the properties are substantially dissimilar it would appear that their adaptability for the same use would not be such a consideration as to make the tracts similar for the purpose of comparison. If the unit valuation rule is to be continued it would appear to me to be of little aid in utilizing comparison sales where the value of buildings had to be deducted either from the comparison tract or the tract to be taken in order to arrive at some appropriate comparison. I, therefore, would reject the contention of the appellant that it is appropriate to use a vacant tract as a comparison by deducting the value of buildings on the tract taken.

The question remains in the instant case, whether the presence of buildings on the tract taken, constituted such an element of dissimilarity that the sale of the tract without the buildings was an improper comparison sale.

After the testimony of its first appraisal witness, appellant made an offer of proof outside the presence of the jury by way of the testimony of one Nederost. He testified that he purchased the 10-acre tract across the road from the subject property in May, 1966, for $15,000. He further testified that the tract was located on the same intersection as the subject property, indicating frontage on each of the roads, that the tract was gently rolling and was used for farming (as was the subject property). This evidence, together with the contract of sale and closing statement offered in support thereof, was refused by the court. This offer of proof must be considered in light of other evidence in the case particularly that introduced by appellee by way of cross-examination of appellant's valuation witnesses. Appellee's counsel attempted to elicit from such witnesses details concerning subdividing the subject property, including

number of lots, the size thereof and the location of roads. It is true that neither the questions nor the testimony indicated that the present buildings on the subject property would be razed. It is clear, however, from the questions that the potential subdividing was not limited to the area unoccupied by buildings but concerned the tract as a whole. Accordingly, I believe that it is a reasonable inference from the evidence, that the highest and best use or greatest potential value in fact attached little value to the existing buildings. Furthermore, the buildings occupied only a small portion of the tract taken and accordingly the sale price of the tract across the highway was, in my opinion, a relevant factor in determining value of the tract taken since it included a substantial portion of similar property. This would not mean that the value of the tract taken would be fragmented or divided.

The majority opinion also suggests that the trial court might have considered that confusion would have occurred by the interjection of collateral issues into the case. This appears to me to be speculation, unsupported by the record and not an appropriate conclusion to be drawn from the record. This was the only sale of other real estate sought to be introduced. The number of appraisers was relatively few. In my opinion, rejection of the proffered evidence prevented the jury from considering facts which could have been highly beneficial in its determination of value. Consequently the exclusion thereof was prejudicial to appellant.