LAKE COUNTY FOREST PRESERVE DISTRICT, Plaintiff-Appellee, *v.*
EDWARD O'MALLEY *et al.*, Defendants-Appellants.

Second District    No. 79-557

Opinion filed May 28, 1981.

Mark Drobnick, of Waukegan, for appellants.

Henry C. Tonigan, III, of Donald T. Morrison, Ltd., of Waukegan, for appellee.

Mr. JUSTICE REINHARD delivered the opinion of the court:

This is an appeal by defendants, Joseph J. Drobnick and Jerome P. Drobnick, from a jury verdict awarding them and other named defendants at trial $11,000 as compensation for the condemnation by Lake County Forest Preserve District, plaintiff, of .29 acres of property located in North Chicago, Illinois.

The subject premises are vacant property on the northeast corner of the intersection of 14th Street and Greenbay Road in the City of North Chicago and were zoned R3, a single-family residential district, at the time the petition to condemn was filed by the plaintiff against the defendants as owners. The premises are located at the intersection of two four-lane roads, and have access to water across the street while the nearest sewer hookup is some 2500 feet away. The physical characteristics lend themselves to a commercial type of development, and the rezoning of several nearby properties indicates a commercial trend. A zoning change would be necessary for commercial development. However, even with commercial zoning, the immediate potential development would still be limited since a city sewer hookup is not available and city ordinances restrict the use of septic fields for small lots.

At trial the plaintiff presented two expert witnesses who gave opinions on their valuation of the subject premises. William C. DeBruler, a real estate broker and appraiser, testified that the value of the property was $8,300, while Herbert Harrison, a land-use consultant and appraiser, gave the opinion that the value was $8,500. To the contrary, defendants Joseph Drobnick and Jerome Drobnick, both licensed realtors, testified respectively that the value was $70,000 and $75,000.

The plaintiff introduced evidence of a contract to purchase 1.8 acres

of vacant property several blocks from the subject property at a price of $38,000. Also, having been called under section 60, Joseph Drobnick admitted entering into a contract with Frances Martinelli to purchase a vacant lot approximately one block from the subject premises for $6,500, and entering into a contract with John H. Geddeis to purchase another vacant lot several hundred feet from the subject premises for $4,500. In addition, on cross-examination of Joseph Drobnick during the defendants' case, the State elicited that on May 10, 1976, four days prior to the date the petition to condemn was filed, Joseph Drobnick offered to purchase the subject premises from the owner at that time for $10,000. The defendants introduced evidence that property located about one mile from the subject premises was sold by John Sedej and his wife to Union Oil of California in 1969 for $70,000. Cross-examination revealed that the property was zoned for business and commercial use and had sewer. The trial judge refused defendants' request to admit two other comparable sales of property. One was rejected due to a lack of sufficient similarity with the subject premises, and the other was rejected on the basis it was not listed on the defendants' comparable disclosure list. The jury was taken to view the subject premises during the course of the trial.

Later, during closing argument, counsel for plaintiff made the following statement to the jury concerning the valuation testimony of Joseph and Jerome Drobnick:

> "MR. TONIGAN: Now Mr. Joseph Drobnick got up here on the stand and I will admit he is a great talker. He is a salesman, both of these guys are. In fact, from the date one of the jury view to today they are trying to sell you a piece of property. [*Sic.*] Joe and Jerome Drobnick are up here telling you that the world is a fool. We buy—
>
> * * *
>
> We buy wholesale and we make a buck in retail. Everyone else is the dummy and we are the smart guys. Well, I think they want you—want to do the same thing with you."

Counsel for defendants made a general objection to the argument which the court overruled.

Also in closing argument, counsel for plaintiff made reference to Jerome Drobnick's valuation testimony of $70,000 for the subject premises and made the following calculation: "Jerome P. Drobnick came in and testified that the value of the property was seventy thousand dollars. Be ready for this. That is a hundred and ninety thousand dollars per acre." Counsel for plaintiff also made numerous references to valuation testimony of other witnesses and made similar calculations based on a one-acre lot. Counsel for defendant repeatedly objected to the calculations as

being violative of the unit rule of valuation since the subject parcel was less than one acre. The court overruled these objections.

Defendants allege the following as basis for reversal: (1) the trial court abused its discretion by refusing to admit evidence of defendants' comparable sales (2) the trial court erred in admitting evidence of defendants' offer to purchase the subject parcel, (3) the statements made by counsel for plaintiff during closing argument appealed to the jurors' self-interest and therefore deprived defendants of a fair trial, (4) the statements made by counsel for plaintiff during closing argument violated the unit rule of valuation, and (5) the jury verdict of $11,000 was the result of passion or prejudice. We turn first to the question of the admissibility of the defendants' comparable sales.

■■ The first so-called comparable offered by defendants was the sale of a vacant lot from the First National Bank of Waukegan to the Lexington House Franchise Co. for the price of $85,000. The record shows that the lot is located in Waukegan, Illinois, and is zoned for high-density residential use. The trial court properly exercised its discretion in excluding this evidence since the subject premises are located in North Chicago and zoned differently than the offered comparable.

Although the Illinois Supreme Court has held that the existence of zoning dissimilarities does not per se render evidence of the sale incompetent (*City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 522, 170 N.E.2d 569), the same court also stated that no universal rule could be laid down to govern the degree of similarity that must exist between the properties sold and those condemned to make evidence of the sales admissible. (20 Ill. 2d 512, 522-23, 170 N.E.2d 569.) It is a fundamental principle of eminent domain law that the admissibility of comparable sales in each case rests within the sound discretion of the trial judge. *Department of Public Works & Buildings v. Klehm* (1973), 56 Ill. 2d 121, 125, 306 N.E.2d 1, *cert. denied sub nom. Romano v. Department of Public Works & Buildings* (1974), 417 U.S. 947, 41 L. Ed. 2d 667, 94 S. Ct. 3072.

■■ It is also well established that the trial judge, in making his ruling, should balance the usefulness of the evidence of the comparable sales against the possibility of confusing the jury with collateral issues. As the court in *Forest Preserve District v. Yelk* (1969), 115 Ill. App. 2d 78, 86, 252 N.E.2d 917, 920-21, explained:

> "It is clear that the allowance of such evidence rests within the discretion of the trial court and that such determination by the trial court, as to the admissibility of such evidence, will not be the basis for reversal unless there is a clear abuse of discretion. As emphasized by both appellant and appellee in this case, the ultimate test of the admissibility of sales of property in the vicinity is whether

the final result would be to assist the jury with useful evidence, or confuse the jury with collateral issues."

Since the alleged comparable differed in zoning classification, municipal location, and size, as well as having sewer availability, its introduction into evidence would have presented various collateral issues for the jury to consider. The trial judge is in the best position to determine if the probative value of the evidence is outweighed by the existence of collateral issues, and the record does not reveal an abuse of discretion in this context. Defendants have failed to cite any authority which would tend to show the contrary.

■■ Defendants also assert as error the court's refusal to admit evidence of the sale of another parcel purchased by Mr. Alex Webster and Mr. Adolph Weiss from the First National Bank of Waukegan in 1971 for the price of $60,000. Counsel for plaintiff objected to its admission on the grounds that the sale was not on the comparable disclosure list, and the court sustained the objection. An examination of the record, however, reveals that the sale was disclosed on a supplemental disclosure sheet filed with the court on May 10, 1976. However, the record also reveals that defendant mistakenly agreed at trial at the time of the court's ruling that the sale had not been provided to the court or to opposing counsel on a disclosure list. Such an admission is tantamount to a waiver of the issue for purposes of appeal.

Similarly, due to defendant's mistaken concession, they have failed to carry their burden of proof. Before evidence of a comparable sale can be admitted into evidence, Illinois courts have held that the party advocating its admission has the burden of proving sufficient similarity to the subject parcel. (*Department of Public Works & Buildings v. Drobnick* (1958), 14 Ill. 2d 28, 150 N.E.2d 593.) As the Illinois Supreme Court in *City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 522, 170 N.E.2d 569, 575, stated:

> "While past decisions of this court have firmly established the use of voluntary sales of similar property as collateral evidence of value, the party offering the sales claimed to be comparable has the burden of proving, as a preliminary to the introduction of the prices involved in such sales, that they are similar both in character and locality to the land in controversy."

The record does not disclose any offer of proof of similarity between the subject parcel and the offered comparable, and the record only contains a brief description of that transaction in the additional disclosure list. The defendants have, therefore, failed to provide us with any basis for finding that the exclusion of the sale was error.

However, even if the refusal to admit this evidence was error, this fact, standing alone, does not constitute sufficient grounds for reversal. In

*Lake County Forest Preserve District v. Frecska* (1980), 85 Ill. App. 3d 610, 620, 407 N.E.2d 137, the court stated that where other evidence of value has been admitted on both sides, the improper admission or exclusion of value evidence will not constitute reversible error. As the defendants were allowed to introduce into evidence one other comparable sale, we do not find they were prejudiced considering this entire record.

■■ Defendants' next contention is that the trial court improperly admitted evidence of Joseph Drobnick's offer to purchase the subject parcel. As a general rule in condemnation proceedings, offers to purchase the subject property, if not made by the condemnor (*City of Chicago v. Harrison-Halsted Building Corp.* (1957), 11 Ill. 2d 431, 434, 143 N.E.2d 40), and if made within a reasonable time with the intention and ability to carry out the offer if accepted, are admissible as evidence of value. (*City of Chicago v. Lehmann* (1914), 262 Ill. 468, 104 N.E. 829.) The test for the admissibility of offers to purchase was articulated by the supreme court in *City of Chicago v. Harrison-Halsted Building Corp.* (1957), 11 Ill. 2d 431, 438, 143 N.E.2d 40, 45:

> "If an offer for the lands in question is to be received it must meet the tests of the rule established in the *Lambert* and *Lehmann* cases. The offer must be made in good faith, by a man of good judgment, acquainted with the value of the real estate and of sufficient ability to pay. It must be for cash and not for credit or in exchange and it must be determined whether made with reference to the fair cash market value of the property or to supply a particular need or fancy. Private offers can be multiplied to any extent, for the purpose of the cause, and the bad faith in which they were made would be difficult to prove. The reception of this kind of evidence stands upon an entirely different footing from evidence of actual sales between individuals or by public auction. The question of admission is one involving the discretion of the court and the decision of the court will not be disturbed unless it is manifestly against the weight of the evidence."

Defendants, however, contend that offers to buy or sell are inadmissible where actual sales of comparable properties are available. Defendants do not cite any authority for this proposition. Although there is language to this effect in some Illinois cases, it is doubtful that the absence of comparable sales is a firm prerequisite to the admission of offers to purchase. In fact, the supreme court in *Kankakee Park District v. Heidenreich* (1927), 328 Ill. 198, 159 N.E. 289, indicated that the absence of comparable sales is not even a factor to be considered by the trial judge.

> "Evidence of what has been paid for similar property in the

vicinity at sales made in an open market at or about the time of the taking of the land involved, and what has actually been offered for the property involved by one of good judgment and able to buy, is as valuable to the jury in determining the actual market value of the land involved as the opinions of witnesses. * * * Evidence otherwise relevant and useful ought not to be excluded under a universal rule when there is at hand the expedient of leaving it to the discretion of the trial court to draw a line of exclusion whenever the evil of confusion of issues impends. (I Wigmore on Evidence, —2d ed.—sec. 444.) Other courts admit proof of *bona fide* offers for property on the theory that they afford some test as to value." 328 Ill. 198, 203, 159 N.E. 289, 292.

■■ Assuming, *arguendo*, that defendants are correct in their previous contention, the offer to purchase is still admissible on other grounds. Illinois courts have held that declarations by an owner that his property is worth less than what he contends at trial are admissible as admissions against interest. (*Springer v. City of Chicago* (1891), 135 Ill. 552, 558, 26 N.E. 514; *Department of Public Works & Buildings v. Exchange National Bank* (1975), 31 Ill. App. 3d 88, 103, 334 N.E.2d 810.) At trial, Joseph Drobnick testified that, in his opinion, the value of the subject property was $75,000. However, four days prior to the filing of the condemnation petition Mr. Drobnick had made an offer to purchase the subject property for $10,000. Although the relevant cases speak of admissions by owners of the condemned property, and Mr. Drobnick was obviously not an owner at the time he made the offer, this point is not significant. The rule should be extended to cover the present situation especially in light of Mr. Drobnick's subsequent acquisition of an interest in the subject premises. It does not appear that the trial judge abused his discretion in admitting the evidence for the purpose of rebutting Mr. Drobnick's previous valuation testimony.

■■ Defendants also contend that the offer to purchase was inadmissible since it was made while the property was under threat of condemnation. Defendants cite *Pittsburg, Cincinnati, Chicago & St. Louis Ry. Co. v. Gage* (1918), 286 Ill. 213, 121 N.E. 582, as authority. While this is a correct statement of the law, the principle is inapplicable to the case at bar. Examination of the record discloses that the offer to purchase was made four days prior to the filing of the petition to condemn. The Illinois cases which apply the above principle involve situations where the offer has been made after the petition has been filed. (See, *e.g., Department of Public Works & Buildings v. Finks* (1956), 10 Ill. 2d 15, 19, 139 N.E.2d 267, and *Forest Preserve District v. Eckoff* (1939), 372 Ill. 391, 395, 24 N.E.2d 52.) Defendant's reliance on this rule is, therefore, misplaced.

Defendants cite *Department of Public Works & Buildings v. Sun Oil*

*Co.* (1978), 66 Ill. App. 3d 64, 383 N.E.2d 634, in support of their next contention that counsel for plaintiff, in closing argument, appealed to the jurors' self-interest and thus deprived defendants of a fair trial. This case, however, is inapposite. In *Sun Oil*, counsel for the condemnor made a statement during closing argument to the effect that a big profit for the defendants would be at the taxpayers' expense. The appellate court found this argument improper as it made the jurors conscious of their personal interest in the amount of compensation awarded. Other cases in this area involve the same basic fact pattern. In *St. Clair Housing Authority v. Quirin* (1942), 379 Ill. 52, 57-58, 39 N.E.2d 363, the supreme court ruled that it was error to allow the defendant, during voir dire, to point out that the Federal Government would be paying for the property. The court felt that such a statement was an invitation to prospective jurors to be liberal with the money of the Federal Government. Similarly, in *Department of Public Works & Buildings v. Keck* (1928), 330 Ill. 39, 41, 161 N.E. 55, the supreme court held that a jury instruction stating that the subject property would be paid for by the State and not by the county or town was properly refused. The statement complained of in the case at bar related to the valuation testimony of Joseph and Jerome Drobnick and in no way made reference to the source of payment for the subject property and did not otherwise appeal to the jurors' self-interest.

Defendants further allege that other statements made by counsel for plaintiff during closing argument violated the unit rule of valuation. Defendants cite *City of Chicago v. Callender* (1947), 396 Ill. 371, 71 N.E.2d 643, as authority. However, the *Callender* case and its progeny do not lend support to defendants' theory. The rule announced in *Callender* was simply that, where the property taken included a building, evidence tending to show the reproduction cost or sound value of the building separate from the value of the land was properly excluded. The separate value of the building may be considered but only insofar as it affects the value of the land as a whole. Similarly, the supreme court held in *Department of Public Works & Buildings v. Oberlander* (1969), 42 Ill. 2d 410, 416, 247 N.E.2d 888, that although it was proper for the defendant to introduce evidence of the existence of mineral deposits in order to enhance the value of the land taken, it was improper to value the deposits apart from the land itself. The court stated:

"Concerning the fair market value of land containing mineral deposits this court has stated that: 'The rule is that compensation must be estimated for the land as land, with all its capabilities, and if there is timber on it, or coal, oil or other minerals under the surface, they are to be considered so far as they affect the value of the land but they cannot be valued separately.' (*Forest Preserve Dist. v. Caraher*, 299 Ill. 11, 17; accord, *Department of Public*

*Works and Buildings v. Hubbard* 363 Ill. 99, 102; see also *City of Chicago v. Central National Bank*, 5 Ill. 2d 164, 175; *Chicago Land Clearance Com. v. Darrow*, 12 Ill. 2d 365, 372.) Putting it somewhat differently, where, as here, the property is not taken for the purpose of obtaining the minerals of a going business (see *City of Chicago v. Farwell*, 286 Ill. 415, 423; 29A C.J.S. Eminent Domain, §174, p. 737, note 87), it is improper to appraise separately the mineral deposit and add its value to the value of the land without the deposits (4 Nichols on Eminent Domain 13.22; I Orgel, Valuation under the Law of Eminent Domain, 2d ed. sec. 165, p. 672; Jahr, Law of Eminent Domain—Valuation and Procedure, sec. 151; see *Department of Public Works and Buildings v. Lotta*, 27 Ill. 2d 455, 456.) It is proper, however, for the owner to establish the existence of valuable mineral deposits on the real estate being valued and in doing this to show the character of the deposit(s) and to what extent it enhances the land's market value. *Forest Preserve Dist. v. Caraher*, 299 Ill. 11, 17-18; *Forest Preserve Dist. v. Kercher*, 394 Ill. 11, 23." 42 Ill. 2d 410, 415-16, 247 N.E.2d 888, 892.

See also *Department of Transportation v. Toledo, Peoria & Western Ry. Co.* (1979), 75 Ill. 2d 436, 441, 389 N.E.2d 546, *cert. denied* (1979), 444 U.S. 929, 62 L. Ed. 2d 186, 100 S. Ct. 271.

It is thus apparent that the thrust of these cases is to disallow valuation testimony based on a summation of the value of the land plus the value of any of its resources or improvements. In the present case, counsel for plaintiff made no mention of the value of the land's separate components. The statements objected to in closing argument were merely computations of the value of a hypothetical one-acre lot based on the valuation testimony received during trial.

Defendants' final contention is that the jury verdict was the result of passion, prejudice and mistake. Defendants, however, have not asserted any basis for such prejudice other than those previously mentioned. They have, therefore, failed to provide a ground for overturning the jury's verdict.

■█▌ It is well settled in Illinois that unless a jury's verdict in a condemnation proceeding is the result of passion or prejudice, it will not be overturned if the jury has viewed the subject premises and the verdict was within the range of evidence. (*Trustees of Schools v. LaSalle National Bank* (1961), 21 Ill. 2d 552, 173 N.E.2d 464, *Department of Conservation v. Kyes* (1978), 57 Ill. App. 3d 563, 373 N.E.2d 304.) In the present case, the valuation testimony ranged from a high of $75,000 to a low of $8,300. The verdict of $11,000 is within this range. Although the verdict is substantially closer to the testimony offered by plaintiff's witnesses, this is not, by itself, a basis for reversal. In *Department of Public Works &*

*Buildings v. Christensen* (1962), 25 Ill. 2d 273, 276-77, 184 N.E.2d 884, the supreme court held that, without a showing of passion or prejudice, the jury's verdict would not be disturbed even though it substantially agreed with the valuation witnesses of the plaintiff and seemed to disregard the testimony of the owner's witness. The defendants have failed to demonstrate that the verdict was inadequate.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

NASH and HOPF, JJ., concur.