THE DEPARTMENT OF BUSINESS AND ECONOMIC DEVELOPMENT, Petitioner-Appellee, *v.* PETER BAUMANN *et al.*, Respondents-Appellants.

(No. 71-267;

Second District—December 21, 1972.

*Rehearing denied January 18, 1973.*

2

4

Edward T. Graham, of Wheaton, and Sidney Z. Karasik, of Chicago, both for appellants.

William J. Scott, Attorney General, of Chicago, (Calvert J. Gordon and Frank S. Righeimer, Jr., Special Assistant Attorneys General, of counsel,) for appellee.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

The respondents-appellants, Edwin M. Kames and Ellen A. Kames (hereinafter, the defendants), appeal from a judgment entered upon a jury verdict in a condemnation proceeding brought by the Department of Business and Economic Development of the State of Illinois (hereinafter, the Department).

On December 24, 1968, the Department filed a petition to condemn several parcels of land, one of which defendants owned. On February 29, 1969, title to the whole of the defendants' land was vested in the Department, pursuant to the quick-take provisions of the Eminent Domain Act. (Ill. Rev. Stat. 1967, ch. 47, sec. 2.1 *et seq.*) The matter proceeded to trial on January 18, 1971 and the jury returned a verdict of $359,-464.00 as compensation for the defendants' property.

There are eight contentions raised on appeal:

## I.

*Defendants were deprived of the right to proceed first at all stages of the trial.*

■■ Prior to trial, defendants made a motion to proceed first at all stages of the trial. This motion was denied. They argue that the general rule, that the condemnor has the right to proceed first (*South Park Commrs. v. Trustees of Schools*, 107 Ill. 489, 491-493 (1883); *McReynolds et al. v. B. & O. Ry. Co.*, 106 Ill. 152, 157 (1883)), does not apply where title has vested in the condemnor pursuant to the quick-take provisions of the Eminent Domain Act. (See, *Dept. of Public Works & Bldgs. v. Dixon,*

37 Ill.2d 518 (1967).) It is argued that where title has vested in the condemnor through quick-take, the property owner has the right to proceed first at all stages of the trial.

The Supreme Court, in the very recent decision of the *Dept. of Bus. & Economic Dev. v. Brummel,* 52 Ill.2d 538 (1972), has clearly disposed of the defendants' argument by stating:

> "* * * [W]hen the title has vested in the condemnor under the quick-take statute and there has been no cross-petition for damages to the remainder, there is no valid reason why the burden of going forward should shift to the condemnee." 52 Ill.2d, at p. 542.

In the instant case, there was a taking of the whole and there was no cross-petition for damages to the remainder filed by the defendants. Thus, the trial judge correctly denied the motion.

## II.

*The court erred in admitting the Department's evidence of alleged comparable sales.*

The tract of land acquired by the Department was a 10.5 square mile (6800 acre) site in northwestern Du Page and eastern Kane Counties which was to be used for the federal government's Weston Atomic Accelerator project. Defendants' portion of the property, 137.2 acres of farmland, was located at the northeast corner of McChesney Road and Warrenville-Batavia Road, and had approximately 3100 feet of frontage on Batavia Road and 1300 feet of frontage on McChesney Road. The land was slightly undulating with natural drainage, had tillable soil and had been used for farming for at least the last thirty years. It was zoned R-2 (residential), was improved with a well-maintained two-story frame residence, a two-story frame barn, a machine shed, corn crib, hog house and poultry house.

Evidence of the sales of six allegedly comparable parcels was presented by the Department and admitted. Five of those properties were located around the perimeter of the Weston site and were approximately one to three miles from the defendants' property; one was located within the site area. The properties sold were:

| | |
|---|---|
| *Ward Farm* | 60 acres containing no improvements; used for farming; 643 feet of frontage along Route 59; sold in March, 1968. |
| *Brummel Tract* | 26 acres containing no improvements; located at a cross-road; used for farming; sold November 30, 1966. |

| | |
|---|---|
| *Allen-Stetzer Farm* | 46.16 acres with no improvements; used for farming; located at a cross-road; sold December 17, 1965. |
| *Rahr Tract* | 60.89 acres; used for farming; fronted on one road; sold August 31, 1966. |
| *Sippy Farm* | 67.84 acres with farm buildings, some of which were burned down; used for farming; fronted on one road; sold May 3, 1968. |
| *Campfire Girls Site* | 17.37 acres with no improvements; heavily wooded; fronted 1300 feet on one road; sold in July 1966; located within Weston site. |

Defendants object to the admission of evidence of these sales, alleging that the properties sold were not comparable to theirs in that they were smaller in size and, except for the Sippy farm which contained only burned and deteriorated buildings, they were without improvements.

■■ In determining whether the sale of other properties should be admissible evidence in a condemnation proceeding, there is no fixed rule of law which precisely states those factors requisite to establish the comparableness of properties. Rather, it is stated:

"* * * [T]he admissibility of such evidence must in each instance be determined by the trial judge within the proper limits of his discretion. [Citations omitted.] This court, moreover, has recognized that 'similar' does not mean 'identical', but means having a resemblance * * *. [Citations omitted.] Wherever there is a reasonable basis for comparison between the property sold and that being condemned, evidence of the sale is not incompetent, and the dissimilarities between the properties, which are declared to the jury, affect the weight and value of the testimony rather than its competency. [Citations omitted.]" *City of Evanston v. Piotrowicz,* 20 Ill.2d 512, 522 (1960).

■■ Mere discrepancy in size does not render evidence of the sale of property inadmissible because of dissimilarity. Size is only one factor to be considered by the trial judge when deciding whether evidence of a sale should be admitted. *Forest Preserve Dist. v. Galt,* 412 Ill. 500, 504 (1952); *City of Chicago v. Harbecke,* 409 Ill. 425, 432-433 (1951).

Defendants allege that, "* * * [T]he rule in this State is well established that improved property and unimproved property are not similar or comparable and that comparisons thereof are inadmissible * * *." We have read the cases cited for this proposition (*Forest Preserve Dist. v. Alton R.R. Co.,* 391 Ill. 230 (1945); *C.N.S. & M. R.R. Co. v.*

*Title & Tr. Co.,* 328 Ill. 610 (1928); *Forest Preserve Dist. v. Caraher,* 299 Ill. 11 (1921); *Sanitary District v. Boening,* 267 Ill. 118 (1915); *C. & S. L. Ry. Co. v. Kline,* 220 Ill. 334 (1906)), and find they do not establish such a rigid rule. (Contra, *Dept. of Public Works v. Diggins,* 374 Ill. 11, 15 (1940).) In the cases relied on by defendant, property improvement was only one factor which the courts considered when deciding whether evidence of certain sales should have been admitted.

■■ Lacking a simple rule with respect to admissibility of evidence of sales of improved and unimproved property for comparison purposes, the admissibility rests within the discretion of the trial judge. (*Forest Preserve Dist. of Cook County v. Yelk,* 115 Ill.App.2d 78, 85 (1969); *Department of Public Works & Bldgs. v. Lankford,* 65 Ill.App.2d 133, 138 (1965).) In the exercise of that discretion, it must be noted that the trial judge here had before him factors other than the size and state of improvements which might influence comparability of the properties.

■■ We note that five of the Department's sales properties had the same farm usage as the defendants' property. Identical usage of properties or adaptability to the same usage are important factors to be considered when determining comparability. See, *Dept. of Public Works v. Diggins, supra,* at p. 15; *Forest Preserve Dist. of Cook County v. Yelk, supra,* at p. 85.

■■ The Campfire Girls site was the only property not used for farming. However, defendants did not object to the admission of this sale on the basis of comparability. We, therefore, will not consider arguments relating to comparability of this property. *City of Chicago v. Baird,* 52 Ill.2d 512, 514 (1972).

■■ Still other similarities are found. All of the properties were located one to three miles from the defendants' property. All fronted on roads and two were located at crossroads, as was the defendants' property. All were sold within three years of the date on which the petition to condemn was filed. In fact, the only differences appear to be the size and lack of improvements. We hold that the trial judge did not abuse his discretion in finding that there was a reasonable basis for comparison between the parcels offered by the Department and defendants' property. The dissimilarities were made known to the jury and affected the weight, rather than the admissibility of such evidence.

■■ Defendants also argue that all of the Department's sales evidence should have been excluded because the Department did not provide a proper foundation showing that market conditions were the same on the day those properties were sold as when the petition was filed. We have been cited no case which sets forth such a rule, except where the sales

occurred after the petition to condemn had been filed. *Trustees of Schools v. Chicago City Bank*, 126 Ill.App.2d 302, 305-306 (1970) and cases cited therein.

■■ Defendants allege that affirmative evidence in the record indicated market values had increased dramatically from 1965 through 1968, and that on this basis the Department's comparable sales evidence should have been excluded. They rely upon *Forest Preserve District v. Collins*, 348 Ill. 477, 481 (1932), which held that where there has been a great change in land price between the time the comparable properties had been sold and the time that the petition to condemn had been filed, evidence of the comparable sales is inadmissible. We have reviewed the record and find that there was contradictory evidence as to whether a great change had occurred in the price of realty in the area of the Weston site. It was the function of the trial judge to resolve these inconsistencies. On this basis, no error was committed by allowing the Department's comparable sales evidence.

Defendants allege additional errors regarding evidence admitted on the Ward sale, first claiming that the transaction was not a sale but an exchange of farms and, consequently, not admissible as sales evidence. (*Jefferson Park District v. Sowinski*, 336 Ill. 390, 393 (1929).) The Department does not challenge the general proposition that a transaction involving an exchange of properties is not admissible, but argues that the evidence indicates that this transaction was, in fact, a sale.

James Knippen, one of the purchasers of the Ward farm, testified on behalf of the Department. The following is a portion of his testimony.

"Q. And how much did you pay for the 59 acres?
A. It was $120,000.00

\* \* \*

A. A little over $2,000.00 an acre  \* \* \*

\* \* \*

A. \* \* \* we purchased it outright.
Q. And how did you arrive at the purchased price?
A. He said he wanted $2,000.00 an acre.
Q. Okay. And how was the deal closed, if you know?
A. \* \* \* we finally ended up exchanging a farm with him.
Q. \* \* \* Did you come up with $120,000.00?
A. We had to come up with $120,000.00 to purchase the other farm—

\* \* \*

Q. \* \* \* Where did you put the $120,000.00? Were there escrows set up?

A. I really don't remember whether the escrows were set up or whether we—I know that other farm was $108,000.00 and the $120,000.00 came back to John Ward.

Q. All right. But you had a price of $120,000.00 and you gave him $120,000.00 cash, is that right?

A. I would say that is the way it had to be, but we exchanged a farm.

\* \* \*

Q. Did you get a deed from John Ward for the property?

A. I am sure we did.

Q. And you gave him $120,000.00, isn't that what happened?

A. I would say they were put in escrow some place until we used it.

Q. And then when the escrow closed on your deposit, did he then take part of the money out of the escrow and buy a farm out south somewhere?

A. All I know is we put up the money. I know we had to come up with $120,000.00 and it was put in escrow, and what happened after that I cannot truthfully tell you.

Q. Did you ever see the other farm?

A. No.

Q. Did you ever negotiate with the owner of the other farm?

A. No.

Q. Did you pay the owner of the other farm any money?

A. I wouldn't know who the other owner was.

\* \* \*

Q. \* \* \* you did enter into an exchange agreement with Mr. Ward wherein Mr. Ward acquired a piece of property in exchange for the property that he conveyed to you on Route 59, is that not correct?

A. He wanted a piece of property. It started—I think first of all Larry Kammes came in and presented us—Bob Hatten and myself with the purchase price of $2,000.00 an acre, and then what happened after that, I can't—you know, it has been almost three years ago."

■■ The trial judge held that the transaction was a sale and that for certain tax purposes an escrow had been created. It appears that the intent of the parties was "that the transfer of the subject property was to be for an established cash price." (*Dept. of Public Wks. & Bldgs. v. Klehm*, 6 Ill.App.3d 752, 758 (1972).) The fact that the money was put into escrow and that Mr. Ward ultimately received a farm does not alter the fact that a cash price was established for the farm. The trial court

did not abuse its discretion in allowing the jury to receive evidence of the Ward sale. See, *People ex rel. Dept. of Public Works v. Reardon,* 483 P.2d 20, 93 Cal.Rptr. 852 (S.Ct. Cal. 1971).

■■ Defendants were not permitted to introduce into evidence Respondent's Exhibit 21, titled "Agreement For Exchange of Lands." They now allege that this exhibit clearly demonstrates that the Ward transaction was an exchange. We have read this document and find that, to the contrary, it indicates that the parties contemplated a purchase of the Ward farm for $120,000.

■■ Defendants maintain that they were denied the right to effectively cross-examine Mr. Knippen when the trial judge sustained objections to their inquiry into whether the Ward farm had been resold. The trial judge ruled that it was not "appropriate that the jury know anything about a resale after the date of the petition." To permit evidence of comparable sales occurring after the date of the petition to go to the jury is not, *per se* impermissible. (*Trustees of Schools v. Chicago City Bank, supra,* at 305, 306.) However, defendants' counsel stated that he did not intend to ask the witness the purchase price, but merely desired to inform the jury that the farm had been resold. Without the additional information of the resale price of the land, the bare fact that the farm was resold could only lead to speculation by the jury. No error was committed in sustaining the objection to this line of questioning.

■■ Defendants also allege that the court erred in denying them the right to inquire of Mr. Tellefson (the broker who handled the sale of Campfire Girls site), whether the purchaser of that property knew that the State would be acquiring the land. They argue that if the fact was proven, it would be fair inference to the jury that the purchase price was lower than it should have been. We question this conclusion and hold that the denial of this inquiry was not error because: the inquiry was beyond the scope of direct examination; the trial judge informed defendants that they could attempt to establish such evidence by calling Mr. Tellefson as their own witness; during *in camera* proceedings, when this issue might have been discussed, defendants chose not to ask the witness any questions; no offer of proof was made to indicate, on review, what this questioning would have produced.

### III.

*The court erred in excluding all of defendants' evidence of alleged comparable sales.*

■■ The first sale sought to be introduced was the Phoenix Closures transaction. The trial court excluded evidence of this sale on the basis that the contract provided the seller, at his own cost, would seek rezoning

of the property from business to industrial usage and that if rezoning was not accomplished, the contract would be invalid. The trial judge did not abuse his discretion in excluding evidence of this sale. He correctly noted that the buyers might have paid a premium for the land in order to avoid the uncertainty and costs of rezoning. Consequently, the sale price did not necessarily accurately reflect fair market value of the farm. See, *Sanitary District v. Boening, supra,* at p. 122.

■■ The Kearns and Miller properties were also excluded, primarily because the true purchase price for the land was difficult to determine. There was no abuse of discretion since the contracts for both properties contained provisions which influenced the purchase price (*e.g.,* the seller was given the right to farm the land free for three years and for two additional years at the charge of $15 per acre). The effect which the special benefits may have had upon the purchase price is speculative.

■■ Evidence of the Rapp and Erhardt sales was excluded for several reasons including a difference in zoning and a difference in the area in which these properties were located. While these properties were used for farming, half of the Rapp property and all of the Erhardt property was zoned manufacturing, whereas the defendants' property was zoned residential. It has been held that the existence of zoning dissimilarities does not render incompetent, evidence of an otherwise similar sale. (*City of Evanston v. Piotrowicz, supra,* at pp. 522-523.) In this case, however, the trial judge additionally found that the areas of both allegedly-comparable properties were industrial and totally different from the area in which the defendants' property was located. On the basis of these factors, taken together, the trial judge did not abuse his discretion by excluding the evidence of these sales.

IV.

*The court erred in striking the entire testimony of one of defendants' appraisal witnesses.*

■■ The testimony of Charles Zan, one of defendants' appraisal witnesses, was completely stricken from the record. A witness is competent to testify as to the value of land if it is shown that he is acquainted with the land and has knowledge of real estate value in the vicinity. The question of whether a witness is qualified to testify rests within the discretion of the trial judge. *Trustees of Schools v. Schroeder,* 23 Ill.2d 74, 78 (1961).

Zan stated that he did not walk over the entire property; that his opinion was not based upon any sales in the area; that he did not examine the residence; that the residence had no value; that it did not matter

how many acres there were or what improvements were located on the property. It appears that Zan had neither an acquaintance with the defendants' property nor a knowledge of real estate values within the vicinity, therefore the striking of his testimony cannot be viewed as an abuse of discretion by the trial court.

## V.

*The court erred in admitting Department's Exhibit No. 1 into evidence because there was a lack of proper foundation.*

Department's Exhibit No. 1 was a mosaic purporting to show the entire Weston site area. At the beginning of the trial, without the presence of the jury, the following occurred:

"Mr. Gordon (Department's Attorney): All right. This will be Petitioner's Exhibit 1.

(The document was thereupon marked Petitioner's Exhibit No. 1 for identification.)

Mr. Gordon: This will be Exhibit 2.

(The document was thereupon marked Petitioner's Exhibit No. 2 for identification.)

Mr. Graham (Defendants' Attorney): I have no objection to that.

The Court: All right. They will be received.

(The documents were thereupon received in evidence, marked Petitioner's Exhibits Nos. 1 and 2, and are contained in a separate volume.)"

At the close of the Department's case, the following colloquy took place:

"The Court: All right. Now, before you rest, you have referred to those documents in evidence, and I think that—I am not so sure that they were ever offered or received.

        \*    \*    \*

The Court: Is there any objection to Petitioner's Exhibit 1?

Mr. Graham: Yes, there is, Judge.

The Court: That is overruled. That is admitted."

■■ When the exhibit was initially offered, no objection was raised by defendants and the exhibit was admitted. The objection was raised at the close of the Department's case, only when the trial judge, due to uncertainty, re-admitted all exhibits. Defendants failure to object at the time the exhibit was initially introduced and admitted precludes consideration of this argument. *Forest Preserve Dist. v. Lehmann Est.,* 388 Ill. 416, 429-430 (1944).

## VI.

*Department's Instruction No. 3 was erroneously given.*

Department's Instruction No. 3, based upon I.P.I.—Civil, 2.07, stated:
"In deciding whether any fact has been proved, it is proper to consider the number of witnesses testifying on one side or the other as to that fact, but the number of witnesses alone is not conclusive if the testimony of the lesser number is more convincing."

It is argued that this is a burden of proof instruction and that a burden of proof instruction is not allowed in condemnation proceedings. See, Committee Comments, I.P.I.—Civil 300.30.

■■ This is not a burden of proof instruction and we therefore find no merit to this contention.

## VII.

*The conduct of Department's counsel was inflammatory.*

Department's counsel brought out, during closing argument, that the jurors, when travelling to observe the defendants' property, were transported in a bus operated by the Kammes Bus Company. The judge sustained defendants' objection to the comment and announced, "The bus has nothing to do with the case, counsel." Although the jury was not then instructed to disregard the comment, defendants' counsel did not request such an admonishment.

● 23 We, nonetheless, do not find this remark so inflammatory as to cause reversible error.

## VIII.

*It was prejudicial to permit the Department's appraisal witnesses to testify that they had previously been court-appointed and had appraised other property in the same condemnation proceeding.*

Two of the Department's appraisal witnesses testified on direct examination that they had been appointed by the Circuit Court of Du Page County to appraise various parcels of property located within the Weston site area.[1] They had been appointed pursuant to Sec. 2.2 of the Eminent Domain Act (Ill. Rev. Stat. 1967, ch. 47, sec. 2.2), which provides that in a quick-take proceeding the court may appoint appraisers to evaluate the property to be condemned in order to assist the court in its preliminary finding of just compensation. Although the defendants' property is part of the Weston site, the testimony indicated that the witnesses had not been appointed by any court to appraise the defendants' property

---

[1] One of the witnesses testified that he had also been appointed by the circuit court of Kane County to appraise other site property.

and had not appraised the property in question until hired to do so by the Department.

The defendants allege that it was prejudicial error to permit these witnesses to testify that they had previously been court-appointed to appraise other property within the site area, arguing that disclosure of this fact lent "an aura of impartiality, credence and importance to the testimony of such witnesses."

Sec. 2.2 (d) of the Eminent Domain Act specifically provides that although court-appointed appraisers reports, utilized at quick-take, cannot be evidence in the final proceedings to determine just compensation, the appraisers may be called as witnesses in such proceedings. In *Department of Public Works v. First Nat. Bank*, 61 Ill.App.2d 78, 82 (1965), this court stated that, when testifying in the final proceeding, it would be good practice if the witness did not disclose that he had been court-appointed for the quick-take hearing. Although in that case the appraiser who testified at the final proceeding had been court-appointed to appraise the *subject property* at the earlier quick-take hearing, we feel that the same rationale applies in the case at bar even though the appraisers had not been court-appointed to appraise the *subject property*. The danger that the jury may give undue weight to the testimony of a witness appointed by the court to appraise the subject property also exists when a witness has been court-appointed to appraise other portions of the project of which the subject property is a part.

██ A witness should be allowed to disclose to the jury, as part of his qualifications, that he has in the past been appointed by various courts to appraise property. Such disclosure should not include the fact that the appraisal was of the subject property or the project of which the subject property is a part. Under this practice, the witness would be allowed to state his qualifications while at the same time any possible prejudice to the opponent's case would be avoided.

██ We do not find that disclosure of the prior court appointment of the appraisers, under the circumstances of this case, produced the requisite passion or prejudice necessary for reversal.

> "It is settled in condemnation cases that where the jury's verdict is within the range of evidence, and the jury has viewed the premises, the verdict will not be disturbed on appeal except in cases of passion, prejudice or clear and palpable mistake. [Citations omitted.]" *City of Chicago v. Shell Oil Co.*, 29 Ill.2d 136, 138 (1963).

We affirm the judgment of the lower court.

Judgment affirmed.

SEIDENFELD, P. J., and ABRAHAMSON, J., concur.