36 Ill. App.3d 439 (1976)
343 N.E.2d 686
THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Petitioner-Appellee,
v.
AMERICAN NATIONAL BANK AND TRUST COMPANY, Trustee, et al., Defendants-Appellants.
No. 73-400.
Illinois Appellate Court  Second District (1st Division).
Opinion filed February 6, 1976.
Rehearing denied April 1, 1976.
*440 *441 Dale F. Conde, of Pedderson, Menzimer, Conde, Stoner, Ferolie & Spelman, of Rockford, for appellants.
David L. Martenson, of Rockford, for appellee.
Judgment affirmed.
Mr. JUSTICE HALLETT delivered the opinion of the court:
In 1965 the Department of Public Works and Buildings of the State of Illinois (the State), in a quick-take condemnation proceeding, took 7.067 acres of a 22 1/2-acre tract, the owner receiving $110,000 as preliminary just compensation. When the compensation was finally determined by a jury some eight years later, the verdict was for only $82,000 ($55,000 for land taken and $27,000 damages to the remainder). The owner appeals, raising many issues, but we conclude that the owner received a fair trial, free of reversible error, and affirm.
On September 17, 1965, the State filed a petition to condemn 7.067 acres of a 22 1/2-acre tract located at the northwest corner of Route 5 and Pearl Street in the City of Belvidere, in Boone County. It asked *442 for immediate vesting of title. While the owner of record was American National Bank and Trust Company, the beneficial owner and the real defendant in interest throughout has been the Belvidere South Towne Center. The owner, which had been in the process of developing a shopping center, cross-petitioned for damages in the amount of $50,000 in addition to the fair cash market value of the land to be taken. In a quick-take proceeding the court, on September 24, 1965, fixed the amount of preliminary just compensation at $110,000. On November 30, 1965, that amount was paid.
Neither the State nor the owner took any steps toward bringing the suit to a final determination, until a motion to produce was filed May 15, 1973, by the owner, demanding, inter alia, the transcript of testimony taken at the first hearing. The State complied with the notice to produce on June 5, 1973; there was, however, no copy of the transcript of testimony of the first hearing. Also on June 5, 1973, the case was called for trial. At that time, the owner filed a motion to dismiss for want of prosecution, alleging first that it had completed its improvements on the land approximately 7 years before and the project was complete; second, that its president, Mr. Harlow, was the only person having knowledge concerning all of the facts, that he was 79 years of age, his memory had become faulty, and he had become very ill and therefore was unable to testify or to assist counsel in the case; and third, that, due to the complete change in conditions in the 7 years, the view of the jury would be completely distorted to the owner's prejudice (nevertheless the owner at the trial asked that the jury view the premises). The motion to dismiss was denied.
During the voir dire examination, it became apparent that a large number on the panel were acquainted with Mr. Oakley, the secretary for the owner, or were clients of his, and the State requested the court to excuse them for cause even though they had indicated they would not feel prejudiced. Mr. Oakley had no stock in the shopping center but was present in the courtroom assisting defense counsel. The court denied the State's motion but granted each side two extra peremptory challenges. Because of the large number excused, or challenged by the attorneys or excused on the court's own motion, the original panel was exhausted. The State then moved for a mistrial and a change of venue. The owner opposed the motion and it was denied. Late in the afternoon of June 5, 1973, a full jury was chosen.
Two expert witnesses testified for the State and two for the owner. The first for the State was Mr. William Franzen, who was a real estate broker and an appraiser, had been an appraiser for 26 years, was a member of several appraisal institutes, and has appraised most types of *443 property. He testified that he was familiar with the property, having inspected it twice in 1964 and 1965. In evaluating the property, he did not take into consideration the sales of certain small parcels of land in the area which he did not consider comparable (defendant's objection to the testimony about noncomparables was overruled). He mentioned one comparable sale, a 23-acre tract also zoned for commercial purposes, located several miles out of Loves Park. As brought out on cross-examination, it had all utilities but sewer, used a septic system and had no buildings on it, whereas the subject property already had a development. Moreover, there was no other commercial property in the vicinity. He also agreed on cross-examination that the subject tract had had a corner almost identical with the 1.4-acre corner on the southeast side which had sold for $40,000 and which he had not considered comparable because of size. In response to defense counsel's questions, he also described the access to the property in 1965 and 1973. On redirect, he stated, over objection, that the smaller the unit, the higher generally was the price. He also again repeated his testimony as to the service road, which testimony actually related in part to the conditions in 1973.
Mr. Franzen testified that, based on his general knowledge and experience, it was his opinion that the highest and best use of the property was for commercial purposes, including shopping center facilities; that the fair cash market value of the 22 1/2 acres improved with the supermarket was $414,300; that the value of the 7.067 acres taken was $54,000; and that damage to the remainder was $21,000. On redirect, he testified, over objection, that he had not changed his opinion.
The second expert witness for the State, Mr. Willard Davidson, had been a real estate broker and an appraiser for 28 years, and belonged to the Society of Real Estate Appraisers. He had also taught a course at Rockford College in appraising and had done appraisal work in Boone County for the previous 10 or 15 years, including work for the city of Belvidere. He testified that he was doing some appraisal work in Boone County along Highway 5 in 1965, but that work did not include the subject property; rather he appraised that property just before trial. (An objection was made on the grounds that he was not on the property at the time of the taking and the appraisal was not made at that time. The objection was overruled on the ground that this went to the weight of the appraisal.) The witness testified further that he had seen the property in 1965 while going to other appraisal work and that, when making the appraisal, he had examined a plat of the property, reviewed other appraisals made at the time of the taking, viewed photographs and made a research of the market as it was at that time, including checking the records at the courthouse as to sales; his appraisal would *444 be of the values as of September 17, 1965. He considered two properties to be comparable. The first was a 13-acre tract near Stone Quarry Road. The second was the tract at Harlem and Alpine also described by Mr. Franzen. Because of the location of that one he had adjusted that price 50% upwards. Like Mr. Franzen, he did not consider the small tracts to be comparable. On cross-examination he testified that while the Stone Quarry property was part of a planned development, there were no houses on it at the time and that the property has never been used as a commercial shopping center or anything like that.
Mr. Davidson testified that in his opinion the value of the entire tract as of September 15, 1965, was $412,000, that the fair cash market value of the part taken as of September 15, 1965, was $53,000 and that the damages to the remainder were $25,000. He had arrived at this last figure on the basis that the owner of the property had had a possible gas station corner or a corner which could have been used for a fast food service and that after the taking they lost this particular corner.
Mr. Richard Conner, one of the two expert witnesses for the owner, had been in the real estate development business for 15 years; he was also a real estate broker but was not an appraiser. He had for a while been connected with the development of the shopping center. He testified that the value on September 17, 1965, of the 7.06 acres taken, was over $98,000 and that he would estimate the damage to the remainder as $50,000. This was based on the re-engineering of the project, the problem of ingress and egress, the loss of use of signs on the highway and the change in parking. The original structure was designed for a mall type which had now been abandoned so it is a rather expensive building which was never utilized.
The other expert witness for the owner was Mr. William Jenks, who had been a real estate consultant and appraiser for 30 years, and was a member of various appraisal organizations. He first went on the property in September, 1965. He described several properties in the area he considered comparable, all of them less than 4 acres in size. His opinion was that the value of the part taken was $91,815 and the damage to the remainder $45,185. In arriving at the latter figure he considered the loss of direct access to the highway and the loss of the corner; the lessened value for leasing due to insufficient parking space; decrease in display area; expenditures in regrading frontage roads; expenses for additional engineering, and architectural expenses. On cross-examination, he testified that he had not seen the plan for the 22 acres but only the plan for the store. Furthermore, he had nothing to substantiate the need for several of the expenditures he had enumerated but his own opinion.
Mr. William Oakley, secretary of the owner, testified that the property *445 was acquired in 1962 subject to rezoning, and that the application for rezoning was filed by the former owners in the fall of 1962. (As shown by the actual documents, which the defendant later introduced into evidence, the property was rezoned B-2 on November 14, 1962, on condition that no gas station or other commercial building be erected at the corner. According to Mr. Franzen, it was rezoned C-2 in 1964.) Construction on the first store was begun in 1965; the store, Pacemaker, was opened for business around February 1, 1965. The present tenants were Pacemaker and Nabor Drugs to be opening soon. Mr. Oakley described the original plan and the changes from it, and what had actually been completed after the taking. In 1966, the frontage road deadended a short distance west of the subject property; however, now it meets Seventh Avenue. He also described the other access available as of 1973. On cross-examination, counsel asked whether there was now access to the frontage road, whether the access was the same in 1965 as in 1973 and whether Highway 20 (to which the property now has access) had more traffic than did old Route 5. The objection made to the latter question was sustained and the jury was instructed to disregard it. Mr. Oakley also testified that the property is still being developed in sections and a liquor store and drug store had just been completed. Defendant's objection was overruled on the grounds that there had been extensive testimony on direct examination as to the planned development.
After the completion of the testimony, the jury viewed the property; the view having been requested by both parties.
As we have said, the jury returned a verdict fixing the compensation for the land taken at $55,000 and the damages to the remainder at $27,000 and judgment was entered thereon.
 1 The defendant first contends that the trial court erred in refusing to dismiss the petition for want of prosecution. It is true that nearly 8 years had passed since the quick-take proceedings. However, the defendant, who had been a party to the case, who had received $110,000, in 1965, and who had been represented by counsel throughout, at no time made any attempt to bring the case to trial. If a defendant in a condemnation case desires a speedy trial, it is his duty to demand it. Winkelman v. City of Chicago (1904), 213 Ill. 360, 76 N.E. 1066; Trustees of Schools v. First National Bank (1971), 49 Ill.2d 408, 411-412, 274 N.E.2d 56.
Sanitary District v. Chapin (1907), 226 Ill. 499, 80 N.E. 1017, cited by the defendant does not support its position. In that case, the petitioner had issued a summons which was returned "not found." No attempt was made to issue an alias summons until over 4 years later. When the petitioner *446 insisted that the time of taking be the time of the original petition, although there had been a substantial increase in property values in the interim, the court dismissed for want of prosecution. The supreme court affirmed. Since the defendant in that case had never been served, he had had no duty to go to court. But, the court continued, if he had been brought into court, he was then bound to protect his own rights so far as he was able and to that end he would be required to ask for a speedy trial if he wanted one.
 2 The owner has not shown that it has suffered any prejudice, due to the delay, by means of the value of the land increasing markedly, as was the situation in Chapin. Rather, the only prejudice that the owner has alleged is that, because of the complete change in conditions since 1965, the view of the jury was completely distorted to the defendant's prejudice, and that Mr. Harlow, its president, because of his age, 79, and illness, is unable to assist in the preparation of the case or to testify at the trial. The owner is in no position to complain about the jury view since it joined in requesting one, although the view is no longer mandatory and is in the discretion of the trial court judge. (Department of Public Works and Buildings v. Remmerie (1963), 29 Ill.2d 40, 192 N.E. 2d 877.) As to the preservation of evidence it was not only in the power of the owner, who was represented by counsel throughout, to request a prompt trial, it was in its power to take photographs (as to some extent it did) and to take a deposition to preserve Mr. Harlow's testimony. This is not a case where an innocent defendant, not having properly been made a party to a condemnation proceeding, is now confronted by a petitioner demanding that the measure of damages be fixed as of a date several years before, to the defendant's financial injury and where justice would be served by forcing the petitioner to recommence condemnation proceedings as of the present date. Rather, this is a case where the defendant has enjoyed the use of $110,000 for nearly 8 years and will retain the interest on that amount even though reimbursement be required. We conclude that the contention is without merit.
 3 The owner next contends that the trial court erred in granting both sides two extra peremptory challenges. Even if this were error, which we do not determine (see Smiley v. Barnes (1915), 196 Ill. App. 536), the owner has not shown that it was prejudiced by the action. (Florence v. City of Chicago (1966), 76 Ill. App.2d 43, 221 N.E.2d 145.) The owner was not forced to accept a juror who would not have been part of the jury had not the State exercised the extra peremptory challenges (see Illinois, Iowa & Minnesota Ry. Co. v. Freeman (1904), 210 Ill. 270, 71 N.E. 444, where the defendants received additional peremptory challenges and the plaintiff did not and therefore was prejudiced *447 when it could not remove the new juror). Indeed, the defendant did not exercise all of its peremptory challenges.
 4 The defendant also contends that the case should be reversed and retried because of misconduct of petitioner's attorney, certain statements of Mr. Franzen, and certain rulings of the court.
During the cross-examination of Mr. Oakley by Mr. Martenson, counsel for the State, the following occurred:
"Q: Were you the Attorney for Mr. Harlow when he purchased the property?
A: Yes sir.
Q: What was the purchase price?
MR. CONDE: Objection. That was in 1962, completely remote. Before it was zoned and before the development was started.
MR. MARTENSON: The testimony from Mr. Oakley was that he purchased it subject to the zoning and that he completed it after the zoning. Sixty-three was when he said they completed it.
MR. CONDE: It was completed in 1962.
THE COURT: The witness testified that title was acquired in the year 1962 and zoned in the year 1962; that the zoning was filed on September 4, 1962, and completed in that same year. The question before the Court is whether a purchase price of the property at some time previous to that date is applicable and since the question before the Court and before the Jury is what is the value of the property on a certain specific date with a certain highest and best use, the objection is sustained.
MR. MARTENSON: Our records indicate that the deed for this property was dated November 29, 1963, and that the property was re-zoned by the Boone County Zoning Board to B-2 Business use on July 1, 1963, before the date of the deed.
MR. CONDE: That is argument.
MR. MARTENSON: My question, Mr. Oakley, is now that I have refreshed your recollection with our dates and figures, can you remember exactly the dates or within a close date, the date of the deed to Mr. Harlow and the date of the rezoning of the property?
MR. CONDE: I object. He is being argumentative.
THE COURT: Counsel cannot testify and Jury is instructed to disregard the question and the indication as to what Mr. Martenson's records show. You may ask questions, Mr. Martenson, about what happened on certain dates and what dates were recorded but you cannot tell the Court or the Jury what your records show. There are other ways of bringing that before the Court.

*448 * * *
Q: Were you the Attorney for Mr. Harlow at the time?
A: I think I drew the agreement for it. If not for Mr. Harlow then for Mr. Meyers.
Q: You did indicate that the property was purchased by Mr. Harlow subject to rezoning?
A: I didn't mean to imply that. I don't believe this was in the contract. I think later on Mr. and Mrs. Meyers joined in the petition to rezone it because they were contract sellers. Now it is my recollection that title passed after that.
MR. MARTENSON: Is it my understanding that the Court will not allow me to ask this gentleman the purchase price because it was too far before the taking?
THE COURT: The Court does not feel the purchase price is relevant to the value at that time of the taking unless you can show it was right exactly at the same time and no other zoning or other work had been done. They may have gotten a bargain or they may have paid too much but all they are entitled to in this proceeding is what the property is worth."
 5 While it was improper for the attorney for the State to refer to records not in evidence and to attempt to impeach the witness or "refresh his memory" by such records, the conduct was not so prejudicial to the defendant's case as to cause this court to reverse. The question was not related to a material matter nor did the question in some way impugn the witness' character. The court immediately rebuked counsel and instructed the jury to disregard counsel's statement. (See 34 Ill. L.&Pr., Trial § 97 (1958). Moreover, the exhibits in the record supported Mr. Oakley's testimony. Even if the State's reiteration as to the purchase price, after the original objection had been sustained, were improper, since no objection was made, no question is preserved for review. McElroy v. Force (1967), 38 Ill.2d 528, 232 N.E.2d 708; County of Cook v. Colonial Oil Corp. (1958), 15 Ill.2d 67, 153 N.E.2d 844.
 6 The owner also complains that a denial by Mr. Franzen on cross-examination that defendant had lost its corner misled the jury into denying damages for the loss of the corner. Mr. Franzen testified:
"Q: After the taking, of course, they lost their corner?
A: No, they still have a corner. Mr. Harlow acquired the Marrow property.
Q: I'm talking about the subject property the way it is. I object to his interjecting some other property into this and ask that it be stricken.

*449 MR. MARTENSON: Mr. Conde and his Defendant testified this was 
MR. CONDE: This was completely improper for him to say this. In order for him to protect himself after this taking he goes out and pays a large sum of money for another place of property.
THE COURT: Objection sustained and answer stricken and Jury instructed to disregard the arguments of counsel on this question. What we are trying to do is to ask the witness what he knows and what he doesn't know.
Q: Prior to the taking the line which is down at the bottom was approximately where Route 5 went, did it not?
A: Yes sir.
Q: And Pearl Street takes off at the right side of the drawing so that there was a corner existing at that time prior to the taking?
A: Yes sir.
Q: After the taking there is no corner left to the Defendant is there? There is not a corner at an intersection is there?
A: No, but there is a corner to the property.
Q: Yes, there is one over here (indicating) but there is no street there. Isn't there quite a bit of weight given to what we call corner influence?
A: Sometimes.
Q: A corner in the middle of a block is not so desirable?
A: In some cases it is.
Q: The one you want is one that is right at the corner of two roads and has easy access to both streets?
A: Yes."
It is clear, however, from the whole record that the jury could not have been misled. Mr. Franzen did acknowledge the loss of the corner. Furthermore, Mr. Davidson, the other expert witness for the State, testified that he had relied on the loss of the corner in arriving at his figure for the damages to the remainder. Mr. Jenks also discussed the loss of the corner. Moreover, the burden is on the property owner, not the State, to prove any particular element which he feels materially increases the value of his property. (Department of Public Works & Buildings v. Finks (1956), 10 Ill.2d 15, 139 N.E.2d 267.) The opinions of experts will differ many times as to the weight to be given various elements of value in arriving at the ultimate estimate. "It cannot be said that the petitioner has failed to sustain its burden because it has not put sufficient emphasis on an element of value the property owners believe should be *450 stressed." County of Cook v. Holland (1954), 3 Ill.2d 36, 43, 119 N.E.2d 760.
 7 Counsel for the owner also objects to the questioning of Mr. Oakley on cross-examination as to the current condition and development of the property. However, this cross-examination was proper since the owner on direct examination inquired both as to the current development of the property and the present access to the property at length. If there was any error in the admission of related evidence on cross-examination, it was clearly invited by the testimony originally adduced by the owner (Department of Public Works & Buildings v. Remmerie (1963), 29 Ill.2d 40, 192 N.E.2d 877.) Likewise the single question as to the current termination of the service road, asked Mr. Jenks, even if erroneous, was not prejudicial since the same information had been brought out by the owner's counsel in his examination of Mr. Oakley as well as in his cross-examination of Mr. Franzen. Moreover, the jury was clearly instructed that the damages were to be determined as of the date of the taking, September 17, 1965.
 8 Similarly, it was not error for the court to refuse to exclude Mr. Davidson's testimony merely because he had not been familiar with the subject property and with other property in 1965; he had personal knowledge of the premises, he studied the records as to sales for that time and his appraisal was made effective as of September 17, 1965. An otherwise competent valuation witness is not rendered incompetent merely because he bases his opinion, in part, on hearsay knowledge of other sales. (Forest Preserve District v. Harris Trust and Savings Bank (1969), 108 Ill. App.2d 65, 247 N.E.2d 188.) No objection was made at the trial as to the witness' reliance upon other sales.
 9 While several photographs and plans of the property as well as the plat were introduced into evidence, the court, upon the petitioner's objection, excluded a drawing or sketch showing the way the completed building would look, on the grounds that a proper foundation had not been laid, and further, that it did not depict boundaries, the then existing highway or show dimensions; and lastly, because it might, due to its artistic appeal, be prejudicial to the jury. There was no error. Absent a proper foundation, which the mere offering of the exhibit by defense counsel of course could not provide, the drawing was inadmissible. (Atchison, Topeka & Santa Fe Ry. Co. v. Commerce Com. ex rel. Illinois Coal Traffic Bureau (1929), 335 Ill. 624, 639, 167 N.E. 831; 18 Ill. L.&Pr. Evidence § 234 (1956).) Furthermore, to echo the words of the court in Department of Public Works & Buildings v. Lotta (1963), 27 Ill.2d 455, at page 458, 459, 189 N.E.2d 238, "Whether a [drawing] constitutes a fair representation of the facts or is only an argument in graphic form is a matter for the trial judge to decide in the first instance. The judge *451 here found the defendants' proffered [sketch] misleading * * *. The jury viewed the premises, and it does not appear that this ruling could have obstructed the jury's opportunity to make an adequate and fair appraisal of the lands."
 10 The defendant also complains of the court's refusal to give its instruction on the burden of proof, no other being given. However, the Illinois Pattern Jury Instructions, Civil, No. 300.30 (1965), speaking of condemnation, recommends that no instruction on the burden of proof be given and we concur.
 11 Finally, the defendant insists that the petitioner's appraisals were not based on comparable sales and that the verdict was not supported by the evidence. Defendant did not, however, interpose an objection that the properties were not comparable to the subject property and cannot now complain in that regard. (Department of Public Works & Buildings v. Klehm (1972), 6 Ill. App.3d 752, 286 N.E.2d 558; Department of Business & Economic Development v. Baumann (1972), 9 Ill. App.3d 1, 291 N.E.2d 213.) Furthermore, the admissibility of such sales for comparison purposes lies within the discretion of the trial judge. (Department of Business & Economic Development v. Baumann (1972), 9 Ill. App.3d 1, 291 N.E.2d 213; City of Evanston v. Piotrowicz (1960), 20 Ill.2d 512, 170 N.E.2d 569.) As the latter court stated at 20 Ill.2d 522:
"* * * This court, moreover, has recognized that `similar' does not mean `identical,' but means having a resemblance, and that property may be similar for purposes of fruitful comparison, though each possesses various points of difference. [Citations.] Wherever there is a reasonable basis for comparison between the property sold and that being condemned, evidence of the sale is not incompetent, and the dissimilarities between the properties, which are declared to the jury, affect the weight and value of the testimony rather than its competency."
 12 As the courts have reiterated on many occasions, where the evidence is conflicting, the jury views the premises and the amount of compensation fixed is within the range of the evidence, the verdict will not be disturbed unless the record clearly shows that it has been influenced by passion, or prejudice or unless there has been a clear and palpable mistake. (Forest Preserve District v. Dearlove (1929), 337 Ill. 555, 569, 169 N.E. 753.) Here, the jury verdict ($82,000) was within the range of the evidence and we find no basis for upsetting it. The judgment is affirmed.
Affirmed.
GUILD, P.J., and SEIDENFELD, J., concur.